Battle,- J.
 

 After the issue of
 
 devisavit vel non
 
 was made up in the county coui’t, the only way in which it could be disposed of was by a trial by jury; and if the jurisdiction to have causes tried in that mode had been taken away from the County Courts of Eobeson, and vested exclusively in the Superior Courts of that county, either party had a right to remove tlicir cause to that Court, by a writ of
 
 certiorari,
 
 for the purpose of having the issue tried there. In the case of the
 
 State
 
 v.
 
 Jacobs,
 
 Bush. Rep. 218, we held that by consent, the parties might remove a cause under similar circumstances, without the trouble, delay, and expense of that writ; and that when an order appeared upon the records of the County Court in the following words,
 
 “
 
 Ordered that this cause be transferred to the Superior Court for the trial of the issue”; it would betaken as having been made by consent. The order in this case, following immediately upon the making up of the issue “Eemoved for trial to the next term of the Superior Court of this county,” is one of equivalent import with that in the
 
 State
 
 v.
 
 Jacobs
 
 and must be governed by the same rules. Indeed the counsel for the defendants have not, in this Court, relied much upon the ground of objection to the jurisdiction of the Superior Court; but have sought to sustain the judgment of that Court, dismissing the cause, for the want of jurisdiction, by contending that in the second section of the Act of 1850, entitled “ an Act to repeal an Act entitled an Act to give exclusive jurisdiction to the Superior Courts of Eobeson in all cases where the intervention of a jury shall be necessary ” is unconstitutional, and therefore void.
 

 The first section of the Act, by repealing the act of 1820, restored jury trials to the County Court, and then the second
 
 *315
 
 section provides as follows : “ That if a'majority of the acting-justices of the peace for the said county shall, at any time hereafter, deem the restoration of the jurisdiction of pleas to the said Court inexpedient, they shall have power to abolish the
 
 same;
 
 first giving thirty days notice of their intention upon the court-house door in the town of Lumberton, and in the event of the happening of the same, the clerk of the Court of pleas and quarter sessions shall, within five days thereafter, transfer to the office of the Superior Court clerk of the said county, all books, papers and process in his office wherein the intervention of a jury shall be necessary, and the said Superior Court clerk shall enter the same upon his docket in the same manner and under the same rules and regulations as if the original process had issued from his office.” It is admitted that the justices of the County Court had abolished jury trials therein, prior to the time when the issue in this case was made up; The counsel for the defendant contend that after the jurisdiction to try issues of fact by a j ury had been conferred upon the County Court by law, the power to abolish it was exclusively a legislative power, which the General Assembly alone could exercise; and which, therefore, it could not delegate to the justices of the County Court.
 

 In the discussion of the question of constitutional power, which is thus raised, it is not necessary for us to enter upon an examination of the nature and extent of the power of the Legislature. It is not denied that the law-makers “May order and enact what to them may seem meet and useful, upon all subjects, and in all methods, except those on which their action is restrained by the Constitution,” either of the Unite-d States, or of the State — (See
 
 Hoke
 
 v. Henderson, 4 Dev. Rep. at p. 7.)-Neither4s it necessary for us to consider the general question whether the General Assembly can delegate any portion of its-legislative functions to any man or set of men, acting either in. an individual, or corporate capacity. That it may, has been too long settled and acquiesced in by every department of the-government and by the people, to be now disputed or even discussed. The taxing power is unquestionably a legislative-
 
 *316
 
 power and one of the highést importance: and yet it has, ever since the adoption of the Constitution, been partially delegated to the justices of the county courts and to every incorporated city, town and village, throughout the State. The power to pass laws and ordinances for the government of the members of a corporation is a legislative power, and yet no person has ev.er yet thought it an infringement of the Constitution for the Legislature to confer the power of making by-laws upon the corporation itself. The power of prescribing rules for the orderly conduct of business in a court of justice, is a legislative power, and yet it has often been intrusted to the courts themselves, with the approbation of every body. The truth is, that in the management of all the various and minute details, which a highly civilized and refined society requires, the General Assembly must have, and. are universally conceded to have, the power to act by means of agents; whiph agents may be either individuals or political bodies; most generally the latter. Without such power the Legislature would be an unwieldy body, incapable of accomplishing-one-half of the great purposes for which it was created.
 

 When the act is dorie by the agent, its efficacy is derived, not from the agent, but from the Legislature itself, the source of the power'. Hence, the Legislature has, through its agents, run off and marked the boundaries of counties, and located and established their seats of justice. It has often appointed agents, and conferred upon them authority to ascertain the existence of certain facts, declaring what the law shall be if the facts be found to exist; and yet no one ever thought of doubting that the law went into operation immediately upon the ascertainment of the facts, in the manner designated. Of this a remarkable instance is to be found in the act of 1834, ch. 1, entitled, “An Act concerning a convention to amend the Constitution of the State.” That Act employed the agency of many of the executive and ministerial officers of the government, to ascertain whether it was the will of the people of the State that a convention should be called for the purpose of amending the Constitution, and declared that if a majority
 
 *317
 
 of the voters of the State, should have been found to have cast their votes in favor of the measure, that delegates should be elected, and the convention should be held. It is well known that, without any further legislation on the subject, upon a majority of the votes having been ascertained to be in favor of the calling of the convention, it was called, met, and proceeded to adopt and propose to the people certain amendments, which were ratified by them, and now form a part of our fundamental law. That Convention was composed" of many of the ablest lawyers and statesmen of the State, and though a few of the members doubted of the legality of the restrictions which the act imposed upon them, not one was heard to question its validity in any other respect. Time would fail us to enumerate all the instances of a like partial delegation of power. The celebrated one to which we have just adverted is alope decisive of the case before us.
 

 The Legislature, in substance and effect, appointed the justices of the Count}, Court of Eobeson to ascertain the «fact, whether a majority of them were in favor of surrendering the jurisdiction of having jury trials in Court: and in the event the fact being thus found, enacted that thereafter such jurisdiction should be taken from them and vested exclusively in the Superior Court of the county. The jurisdiction was transferred, not by the justices of the County Court, but by the Legislature; just as the Convention of 1835 was not called into existence by the authority of'the Governor, who ascertained and proclaimed the fact that a majority of the voters of the State were in favor of it, but by the act of the Legislature of 1831, which prescribed the time, manner and circumstances, at, in and under which, it was to meet and perform its important duties. The justices were the mere instruments of the Legislature to perform a certain act, and ascertain a certain event, which, in its wisdom, that body deemed proper to be performed and ascertained, before its will, in relation to a certain matter, should go into operation. Should it be now held that a subsequent declaration of its will is necessary before it can be carried into effect, it will' unsettle many laws which
 
 *318
 
 have, ever since the foundation of our government, been received and universally acted upon as valid. Not to multiply instances: the 29th sec. 31st ch. Rev. Stat., which authorizes the j ustices of the county court to dispense with the attendance of jurors at two of their terms, affords an apt illustration of the subject. That Act, under a somewhat modified form, was passed originally in the year 1806. — (See Rev. Code of 1820, eh. 693, sec. 9.) It has been acted upon in some of the counties of the State for many years, without question, and we think it is now too late to attempt to bring it into doubt. To dispense with the attendance of jurors at two of their terms, is, in effect, to abolish jury trials at those two terms : and is as much a legislative power, as to abolish them at the four terms, or altogether. The cases are alike and cannot be distinguished from each other in principle, and they must both stand or fall together. In our opinion bpth can stand upon the ground that it is the Legislature, and not the justices, which enacts the law by which the jurisdiction is taken away in part (or in whole.
 

 It would be difficult, and it certainly is not necessary, for us to attempt to define the precise boundary between what the General Assembly, in its legislative capacity, is bound to do in and of itself, and what it may do by and through the agency of others. Whatever that dividing line may be, it is clear that the justices of the county court of Robeson, in perfoiuning the act which they were authorized to perform by the legislature of 1850, were not, in a proper sense, legislating upon the subject. As soon as they had done what it was entrusted to them to do, they were
 
 functi officio
 
 and had no further power over the matter. They could not repeal, alter, or amend the law in the slightest particular. They had simply, under the authority of the Legislature, ascertained a fact, and the n the legislative declaration of the will of the law-makers attached a law to that fact. The partial and limited power of the justices is extinguished and gone forever. The universal and unlimited power of the Legislature, within the bounds of tire Constitution, is still existing, and still upholding the
 
 *319
 
 law which took away the jurisdiction of trying jury cases from the County and transferred it to the Superior Court. Under that law his Honor, in the latter court, ought to have entertained and disposed of the present causé, and it was erroneous to dismiss it.
 

 Eor this error the judgment must be reversed, and this must be certified to the superior court, to the end that it may proceed to have the issue tried, and the cause disposed of according to law.
 

 Judgment reversed.
 

 Per Curiam.