The charter of the city of Wilmington, including the several acts amendatory thereof, in effect prior to the act ratified 5 March, 1897, provided for the division of the city into five wards, the biennial (173) election of two aldermen from each of the wards, the holding of the election on the fourth Thursday of March of each year, and the opening of registration books previous to the election.
At and before the passage of the act of 5 March, 1897, the appellees were the mayor and aldermen of the city of Wilmington.
Under the unamended charter the biennial election for aldermen would occur on the fourth Thursday, 25 March, 1897. No appointment of registrars, judges of election, or provisions for opening the registration" books, as required by the unamended charter, was had.
An act entitled "An act to amend the charter of the city of Wilmington" was ratified 5 March, 1897 (Pr. Laws 1897, ch. 150).
The act provides for the election of aldermen to be held according to the charter of the city of Wilmington and the acts amendatory thereto, except that the registration books may be opened for only ten days previous to the election. It also provides that there shall be elected by the qualified voters of each ward one alderman only, and there shall be appointed by the Governor one alderman for each ward.
After the passage of this act, the board of aldermen, for the first time, on 10 March, 1897, called an election to be held on 25 March, 1897, and *Page 157 
on that day appointed to act in the several wards of the city registrars and inspectors of election.
On 11 and 12 March there appeared in the newspapers published in the city of Wilmington the notice which is set out in full in the "facts agreed," giving notice that "an election would be held at the various polling places, for the purpose of electing one alderman from each of the five wards of the city."
On 13 and 14 March, 1897, there appeared in the same papers of said city a notice that "an election would be held on Thursday, (174) 25 March, at the various polling places, for the purpose of electing aldermen from each of the five wards of the city."
It will be observed that the first notice contained no date when the election would be held, but that the second notice corrects the first in this particular. The notices were not signed by any one.
The registration books were opened on 13 March, 1897, twelve days before the election, conformably to the requirements of the act of March, 1897 — the amended act. The election was held on 25 March, 1897. It was fairly conducted. The electors, when voting, voted ballots with one name for alderman, with the exceptions of one or two ballots, upon which two names appeared, as mentioned in one of the returns.
The several returns of election showed the following result:
First Ward — Andrew J. Walker, 820 votes; C. L. Spencer, 201 votes; W. H. Howe, 96 votes; C. H. Thomas, 1 vote.
Second Ward — J. C. Munds, 76 votes; W. E. Springer, 191 votes.
Third Ward — Owen Fennell, 268 votes; Washington Catlett, 19 votes.
Fourth Ward — H. McL. Green, 95 votes; W. E. Yopp, 189 votes.
Fifth Ward — Elijah M. Green, 534 votes; W. E. Mann, 162 votes; C. R. Branch, 84 votes.
The Governor, under the provision of section 2 of the act of March, 1897, appointed as alderman from each of the respective wards: S. P. Wright, John G. Norwood, B. F. Keith, A. J. Hewlett and D. J. Benson.
On Friday, 26 March, 1897, at 9 o'clock a. m., the appellants, S. P. Wright, J. G. Norwood, B. F. Keith, D. J. Benson, A. J. Hewlett, appointees of the Governor, and A. J. Walker and Elijah M. Green, from the First and Fifth wards, respectively, claiming to (175) be elected aldermen, took the oath prescribed by law, and organized, elected S. P. Wright mayor, who then resigned as an alderman, and H. C. Twining was elected to fill the vacancy caused by Wright's resignation as an alderman.
On the same morning, 26 March, 1897, at 11 o'clock, the appellants, H. McL. Green, C. L. Spencer, James C. Munds, Washington Catlett, W. E. Mann, together with W. E. Springer, Owen Fennell, and W. E. Yopp, all claiming an election as aldermen at the said alleged election, *Page 158 
organized themselves into a board of aldermen and elected M. McL. Green as mayor.
Subsequently thereto, on the next day, Saturday, 27 March, 1897, W. E. Springer, Owen Fennell, and W. E. Yopp, who had the day before participated in the organization of the board that elected Green mayor, after notice to A. J. Walker and Elijah M. Green, organized themselves into an alleged board of aldermen, there being present Springer, Yopp, and Fennell, and elected Walker Taylor as mayor.
On 26 March, 1897, the appellees, the old board of aldermen, held a meeting, at which there was a quorum present, and formally resolved and gave notice that they would not deliver possession of the city government to any of the various persons claiming to have been elected aldermen at said alleged election.
The first mentioned mayor and board of aldermen, consisting of the Governor's appointees and two aldermen, claiming their election and appointment as aforesaid, took possession of the city government.
The appellees, W. N. Harris, as mayor, and W. C. VonGlahn and others, as aldermen, being the old mayor and board of aldermen, instituted suit against the defendants, S. P. Wright and the board of (176) aldermen electing him, alleging the unconstitutionality of the act of March, 1897, and that no election had been held, and demanding possession of the respective offices. Summons was returned to the April Term, 1897, of the Superior Court.
The appellant, H. McL. Green, and certain of the alleged aldermen who elected him mayor, likewise instituted a suit against the defendant S. P. Wright and others, upon the grounds set forth in their complaint. Summons was also returnable to the April Term, 1897.
The suits were consolidated at the April Term, 1897, by order of the court.
His Honor gave judgment for the plaintiffs, holding that the act entitled "An act to amend the charter of the city of Wilmington," ratified 5 March, 1897, was unconstitutional and that the election for aldermen of the city of Wilmington, held on 25 March, 1897, was invalid, and that the old board of aldermen and mayor, who were the plaintiffs, and their associates, were entitled to hold their offices until their successors were duly elected and qualified, and that they were entitled to the offices of mayor and aldermen of the city of Wilmington.
From this judgment the several sets of appellants appealed to the Supreme Court.
On the pleadings and the and the facts agreed, the contentions of several of the parties were as follows:
The appellant S. P. Wright, claiming to be mayor, and J. G. Norwood, B. F. Keith, A. J. Hewlett, D. J. Benson, H. C. Twining, A. J. Walker *Page 159 
and Elijah M. Green, claiming to be, with Owen Fennell, W. E. Springer and W. E. Yopp, the aldermen of said city, contended that the act ratified 5 March, 1897, was constitutional and valid in its entirety; that the election was held under and pursuant to the said act and was a valid election, and that they were then elected (with the exception of H. C. Twining), and, having qualified, elected S. P. Wright mayor, who resigned thereupon as an alderman, when they elected the said (177) Twining an alderman in his (Wright's) place.
The appellants, Walker Taylor, claiming to be mayor, and W. E. Yopp, Owen Fennell, W. E. Springer, claiming to be, with A. J. Walker and Elijah M. Green, the duly elected aldermen, contended that the act of the Legislature, ratified 5 March, 1897, was unconstitutional and void, in so far as it conferred power upon the Governor to appoint one alderman from each ward, but was constitutional and valid in so far as to provide for the election of five aldermen; that the election was held under the said act, and that the said W. E. Yopp, Owen Fennell, W. E. Springer, A. J. Walker and Elijah M. Green were duly elected the five aldermen, and, having qualified, a majority of them, to-wit, Yopp, Fennell, and Springer, elected the said Walker Taylor mayor.
The appellants H. McL. Green, claiming to be mayor, and James C. Munds, W. E. Mann, C. L. Spencer, and Washington Catlett, claiming to be, with W. E. Yopp, Owen Fennell, W. E. Springer, A. J. Walker, and Elijah M. Green, the aldermen, contended that so much of the act ratified 5 March, 1897, as devolved upon the Governor the appointment of one alderman from each ward, was null and void, but the remaining portions of the act are good and valid; that the election was held under the provisions of the charter of said city, and acts amendatory thereof, in existence before the passage of the act of 5 March, 1897, and that they, with the said A. J. Walker and Elijah M. Green, were duly elected, and, having qualified, they elected H. McL. Green mayor.
The plaintiffs (appellees) W. N. Harriss, claiming to be mayor and so adjudged to be by the court below, and W. C. VonGlahn, Thomas D. Meares, R. W. Hicks, W. H. Northrop, J. O. Nixon, Thomas J. (178) Gore, and D. D. Cameron, claiming to be and so adjudged to be, with A. J. Walker and W. E. Springer, the legally constituted mayor and aldermen of said city, contend that the act of 5 March, 1897, is unconstitutional and void in its entirety; that the election was held under and pursuant to said act and is invalid; that, there being no valid election held, they are entitled and are in duty bound to hold offices of mayor and aldermen until their successors are legally elected andqualified.
The three cases of Harriss against Wright and others were, by consent, consolidated and tried as one case. Before this controversy arose, Harriss and others were the mayor and board of aldermen in office, and they insist that they are the rightful owners of their offices, holding over on the ground that there has been no valid appointment or election of any successors. The defendant Wright claims the office of mayor of the city of Wilmington by virtue of the Governor's appointment under the authority of the act of Assembly of 1897 (chapter 150), ratified 5 March, 1897. The defendants Taylor and Green, severally, with their respective boards of aldermen, claim said offices by reason of certain elections held for the said city government. As defendant Wright admits that he has no right to said office unless said act of Assembly is valid, we will direct our attention first to his contention.
Under our system, it is said that sovereignty power resides with the people; and this is true, so far as sovereignty can exist in human affairs. In England, we understand that Parliament is the sovereign power of the country. In this county the sovereign people have established National and State constitutions, and these constitutions are the (179) supreme law of the land. They have divided and subdivided the powers of government, with such power in each division or department or branch as they deemed expedient for the good of the public and local convenience of the citizens. Among these is the legislative branch, invested with a vast field of power, and in fact all legislative power not prohibited by the organic law. These great powers are exercised within legislative discretion, and, although we know by experience that this exercise of power is sometimes abused, yet this seems inseparable from the nature of human institutions. No man or men have yet been able to establish a government capable of accomplishing its legitimate ends, and also incapable of some inconvenience and mischief. In our system a prime object has been to give the people all the rights of persons and things that are consistent with such restraint as are necessary for the public good and general welfare, and among these is the principle of local self-government; and we were impressed by all the parties to this controversy, during the argument, with their avowed devotion to that principle. Prior to 1875, the principle of local self-government was absolutely safe and secure by provisions of the organic law of the State, but during that year a constitutional convention convened, and, for reasons presumably satisfactory to itself, amended Article VII of the Constitution, in these words: "Section 14. The General Assembly shall have full power by statute to modify, change or abrogate any and all of the provisions of this article and substitute others in their place, except sections 7, 9, and 13." Thus was placed at the will and discretion of the Assembly, the political branch of the State Government, the election of *Page 161 
county officers, the duty of county commissioners, the division of counties into districts, the corporate powers of districts and townships, the election of township officers, the assessment of taxable property, the drawing of money from the county or township treasury, the entry of officers on duty, the appointment of justices of the peace, and all charters, ordinances, and provisions relating to municipal (180) corporations. These important subjects were fixed and distinctly settled in the Constitution before the adoption of said amendment, and the present controversy is one of the practical results of such change in the Constitution. With the motives and wisdom of the adoption of said section 14, Article VII, this Court has nothing to do.
Laws 1897, ch. 150, to amend the charter of the city of Wilmington, provides "That there shall be elected by the qualified voters of each ward one alderman only, and there shall be appointed by the Governor one alderman for each ward, and the board of aldermen thus constituted shall elect a mayor according to laws declared to be in force by this act," and repeals all laws in conflict with this act. Is that act constitutional, or void? That is the pivotal point in this contention. It seems not to be denied that, under Article VII, section 14, the Legislature may not only "modify, change or abrogate" all the enumerated sections of said article, but may "substitute others in their place"; but it is argued that the act of 1897 (chapter 150) assumes more power than is authorized by Article VII, section 14. How it exceeds the authority is not clearly pointed out. There is no limitation on the power in said section 14, and we have found none elsewhere in the Constitution. Constitutions are general in their provisions, and do not enter into details. Certainly, ours has not done so in this instance. It is urged, however, that the exercise of the power now claimed under the act would infringe upon general principles of law and would deprive the people, in this particular respect, of the power of local self-government. A brief answer would seem to be, "Lex ita scripta est." What kind of substitute could the Legislature make without subjecting itself to the same objection? Let us suppose that, in pursuance of section 14, the Legislature should "modify and change" section 12 of Article VII and insert therein (181) these words: "There shall be elected by the qualified voters of each ward one alderman only, and there shall be appointed by the Governor one alderman for each ward." The validity of that substitution would not be questioned. Is it, then, any more efficacious in that form than the same language in the act under consideration, each provision depending solely upon said section 14, Article VII, for its vitality? The people, then, by adopting Article VII, section 14, have clearly invested their representatives in the Legislature with the power in question, to be exercised at their discretion, with which the Court cannot *Page 162 
interfere. We had some comment on Article VIII, section 4, as controlling the subject before us. That section does refer to cities and towns, by its very terms. It requires the Legislature to provide for the organization of cities and towns, and to restrict the power of such cities and towns in the particulars therein enumerated. There is no restraint upon the Legislature and no conflict with Article VII, section 14. This section (4) is an exact copy of Article VIII, section 9, of the Constitution of New York. It was held in that State, and several others having the same constitutional provision, that what the restriction should be upon the enumerated powers, and how they shall be imposed, are subjects left to the discretion of the legislative department, with the exercise of which the courts cannot interfere. We are led, then, to conclude, upon the language of section 14, and upon some of the best text writers, and upon the recognition of the principle we are announcing by this Court, that the act of 1897 (chapter 150) is constitutional and valid. Mills v. Williams, 33 N.C. 558; Dare v.Currituck, 95 N.C. 189; Lilly v. Taylor, 88 N.C. 489; Wood v. Oxford,97 N.C. 227; McCormac v. Comrs., 90 N.C. 441; Brown v. Comrs., 100 N.C. 92;Wallace v. Trustees, 84 N.C. 164.
Much of the learning with which we were entertained on the argument refers to the law prior to and unlike Article VII, section 14. (182) Some of the briefs filed draw in question the power of the Legislature to delegate its authority in the premises to the Governor, as is done in the act we have discussed. This cannot now be seriously disputed in North Carolina. We refer to one case which fully sets that matter at rest, and which has been followed uniformly in other cases and to the same effect. Thompson v. Floyd, 47 N.C. 313. The Legislature, when not prohibited, acts through agents — either individuals or corporate bodies. Practically, it could not well discharge its duty without such agencies.
Our opinion is that defendant Wright and his board of aldermen are the rightful owners of the offices in the city government now occupied by them.
Reversed.