W. N. HARRISS, et al. v. S. P. WRIGHT, et al.

*Constitutionality of Statute—Legislative Power—Delegation of Legislative Power.*

1. Under Section 14 of Article 7 of the Constitution providing that the General Assembly shall have full power by statute to modify, change, or abrogate any and all of the provisions of that article (except sections 7, 9 and 13) and substitute others in their stead, all charters, ordinances and provisions relating to municipal corporations are entrusted to the discretion of the Legislature; and hence,

2. Chapter 150, Acts of 1897, amending the charter of the City of Wilmington and providing for the election of one alderman only for each ward and the appointment by the Governor of the State of one alderman for each ward of said city, is constitutional and valid.

3. The delegation to the Governor of the State of the power of appointing a portion of the aldermen of a city is within the scope of the power entrusted to the discretion of the Legislature by Section 14, Article 7, of the Constitution

CIVIL ACTION, (being a consolidation of three separate actions), involving the title to the offices of Mayor and Board of Aldermen of the City of Wilmington, heard before *McIver, J.,* on the pleadings and facts agreed, at April Term, 1897, of NEW HANOVER Superior Court,

The Charter of the City of Wilmington, including the several Acts amendatory thereof, in effect prior to the Act ratified the 5th day of March, 1897, provided for the division

of the City into five wards; the biennial election of two Aldermen from each of the wards; the holding of the election on the fourth Thursday of March of each year and the opening of registration books previous to the election.

At and before the passage of the Act of March 5th, 1897, the appellees were the Mayor and Aldermen of the City of Wilmington.

Under the unamended Charter the biennial election for Aldermen would occur on the fourth Thursday, the 25th day of March, 1897. No appointment of registrars, judges of election or provisions for opening the registration books, as required by the unamended Charter, was had.

An Act entitled "An Act to amend the Charter of the City of Wilmington" was ratified the 5th day of March, 1897, (Private Acts 1897, Chapter 150).

The Act provides for the election of Aldermen to be held according to the Charter of the City of Wilmington and the Acts amendatory thereto, except that the registration books may be opened for only ten days previous to the election. It also provides that there shall be elected by the qualified voters of each ward one Alderman only, and there shall be appointed by the Governor one Alderman for each ward.

After the passage of this Act, the Board of Aldermen, for the first time, on March 10th, 1897, called an election to be held on the 25th day of March, 1897, and on that day appointed to act in the several wards of the City, registrars and inspectors of election.

On March 11th and 12th there appeared in the newspapers published in the City of Wilmington the notice which is set out in full in the "Facts Agreed," giving notice that "an election would be held at the various polling places for the purpose of electing one Alderman from each of the five wards of the City."

On the 13th and 14th of March, 1897, there appeared in

the same papers of said City a notice that "An election would be held on Thursday, March 25th, at the various polling places, for the purpose of electing Aldermen from each of the five wards of the City."

It will be observed that the first notice contained no date when the election would be held, but that the second notice corrects the first in this particular. The notices were not signed by any one.

The registration books were opened on the 13th day of March, 1897, twelve days before the election, conformably to the requirements of the Act of March, 1897—the amended Act. The election was held on the 25th day of March, 1897. It was fairly conducted. The electors, when voting, voted ballots with one name for Alderman, with the exceptions of one or two ballots upon which two names appeared, as mentioned in one of the returns.

The several returns of election showed the following result:

First Ward—Andrew J. Walker, 820 votes; C. L. Spencer, 201 votes; W. H. Howe, 96 votes; C. H. Thomas, 1 vote. Second Ward—J. C. Munds, 76 votes; W. E. Springer, 191 votes. Third Ward—Owen Fennell, 268 votes; Washington Catlett, 19 votes. Fourth Ward—H. McL. Green, 95 votes; W. E. Yopp, 189 votes. Fifth Ward—Elijah M. Green, 534 votes; W. E. Mann, 162 votes; C. R. Branch, 84 votes.

The Governor, under the provision of Section Second, of the Act of March, 1897, appointed as Aldermen from each of the respective wards: S. P. Wright, John G. Norwood, B. F. Keith, A. J. Hewlett and D. J. Benson.

On Friday, the 26th of March, 1897, at 9 o'clock a. m., the appellants, S. P. Wright, J. G. Norwood, B. F. Keith, D. J. Benson, A. J. Hewlett, appointees of the Governor, and A. J. Walker and Elijah M. Green, from the first and

fifth wards respectively, claiming to be elected Aldermen, took the oath prescribed by law and organized, elected S. P. Wright, Mayor, who then resigned as an Alderman, and H. C. Twining was elected to fill the vacancy caused by Wright's resignation as an Alderman.

On the same morning, the 26th day of March, 1897, at 11 o'clock, the appellants, H. McL. Green, C. L. Spencer, James C. Munds, Washington Catlett, W. E. Mann, together with W. E. Springer, Owen Fennell and W. E. Yopp, all claiming an election as Aldermen at the said alleged election, organized themselves into a Board of Aldermen and elected H. McL. Green as Mayor.

Subsequently thereto, on the next day, Saturday, the 27th day of March, 1897, W. E. Springer, Owen Fennell and W. E. Yopp, who had the day before participated in the organization of the Board that elected Green, Mayor, after notice to A. J. Walker and Elijah M. Green, organized themselves into an alleged Board of Aldermen, there being present Springer, Yopp and Fennell, and elected Walker Taylor as Mayor.

On the 26th day of March, 1897, the appellees, the old Board of Aldermen, held a meeting at which there was a quorum present, and formally resolved and gave notice that they would not deliver possession of the City Government to any of the various persons claiming to have been elected Aldermen at said alleged election.

The first mentioned Mayor and Board of Aldermen, consisting of the Governor's appointees and two Aldermen, claiming their election and appointment as aforesaid, took possession of the City Government.

The appellees, W. N. Harris, as Mayor, and W. C. Von-Glahn and others as Aldermen, being the old Mayor and Board of Aldermen, instituted suit against the defendants S. P. Wright and the Board of Aldermen electing him, alleg-

ing the unconstitutionality of the Act of March, 1897, and that no election had been held, and demanding possession of the respective offices. Summons was returned to the April Term, 1897, of the Superior Court.

The appellant, H. McL. Green, and certain of the alleged Aldermen who elected him Mayor, likewise instituted a suit against the defendant S. P. Wright and others, upon the grounds set forth in their complaint. Summons was also returnable to the April Term, 1897.

The suits were consolidated at the April Term, 1897, by order of the Court.

His Honor gave judgment for the plaintiffs, holding that the Act entitled "An Act to Amend the Charter of the City of Wilmington," ratified the 5th day of March, 1897, was unconstitutional and that the election for Aldermen of the City of Wilmington held on the 25th day of March, 1897, was invalid and that the old Board of Aldermen and Mayor, who were the plaintiffs, and their associates were entitled to hold their offices until their successors were duly elected and qualified, and that they were entitled to the offices of Mayor and Aldermen of the City of Wilmington.

From this judgment the several sets of appellants appealed to the Supreme Court.

On the pleadings and the facts agreed the contentions of several parties were as follows:

The appellant S. P. Wright, claiming to be Mayor, and J. G. Norwood, B. F. Keith, A. J. Hewlett, D. J. Benson, H. C. Twining, A. J. Walker and Elijah M. Green, claiming to be, with Owen Fennell, W. E. Springer and W. E. Yopp, the Aldermen of said City, contended that the Act ratified the fifth of March, 1897, was constitutional and valid in its entirety, that the election was held under and pursuant to the said Act and was a valid election, and that they were then elected, (with the exception of H. C. Twining,) and having qualified, elected S. P. Wright, Mayor, who resigned

thereupon as an Alderman, when they elected the said Twining an Alderman in his (Wright's) place.

The appellants, Walker Taylor, claiming to be Mayor, and W. E. Yopp, Owen Fennell, W. E. Springer, claiming to be, with A. J. Walker and Elijah M. Green, the duly elected Aldermen, contended that the Act of the Legislature ratified the 5th day of March, 1897, was unconstitutional and void, in so far as it conferred power upon the Governor to appoint one Alderman from each ward, but was constitutional and valid in so far as to provide for the election of five Aldermen; that the election was held under the said Act, and that the said W. E. Yopp, Owen Fennell, W. E. Springer, A. J. Walker and Elijah M. Green were duly elected the five Aldermen, and, having qualified, a majority of them, *to-wit:* Yopp, Fennell and Springer, elected the said Walker Taylor, Mayor.

The appellants, H. McL. Green, claiming to be Mayor, and James C. Munds, W. E. Mann, C. L. Spencer and Washington Catlett, claiming to be, with W. E. Yopp, Owen Fennell, W. E. Springer, A. J. Walker and Elijah M. Green, the Aldermen, contended that so much of the Act ratified March 5th, 1897, as devolved upon the Governor the appointment of one Alderman from each ward was null and void, but the remaining portions of the Act are good and valid; that the election was held under the provisions of the Charter of said City and Acts amendatory thereof, in existence before the passage of the Act of March 5th, 1897, and that they, with the said A. J. Walker and Elijah M. Green, were duly elected, and, having qualified, they elected H. McL. Green, Mayor.

The plaintiffs (appellees), W. N. Harriss, claiming to be Mayor, and so adjudged to be by the Court below, and W.

121—23

C. VonGlahn, Thos. D. Meares, R. W. Hicks, W. H. Northrop, J. O. Nixon, Thos. J. Gore and D. D. Cameron, claiming to be, and so adjudged to be, with A. J. Walker and W. E. Springer, the legally constituted Mayor and Aldermen of said City, contend, that the Act of March 5th, 1897, is unconstitutional and void in its entirety; that the election was held under and pursuant to said Act and is invalid; that, there being no valid election held, they are entitled, and are in duty bound, to hold the offices of Mayor and Aldermen until their successors are *legally elected and qualified.*

Messrs. *George Rountree* and *Iredell Meares*, for plaintiffs.
Messrs. *Ricaud & Bryan*, for defendants (appellants).

FAIRCLOTH, C. J.:  The three cases of *Harriss* v. *Wright* and others were, by consent, consolidated and tried as one case.  Before this controversy arose, Harriss and others were the Mayor and Board of Aldermen in office; and they insist that they are the rightful owners of their offices, holding over on the ground that there has been no valid appointment or election of any successors.  The defendant, Wright, claims the office of Mayor of the city of Wilmington by virtue of the Governor's appointment under the authority of the Act of Assembly of 1897, Chapter 150, ratified March 5, 1897.  The defendants, Taylor and Green, severally, with their respective Boards of Aldermen, claim said offices by reason of certain elections held for the said city government. As defendant Wright admits that he has no right to said office unless said Act of Assembly is valid, we will direct our attention first to his contention.

Under our system, it is said that sovereign power resides with the people; and this is true, so far as sovereignty can exist in human affairs.  In England we understand that Parliament is the sovereign power of the country.  In this

country the sovereign people have established national and state constitutions, and these constitutions are the supreme law of the land. They have divided and subdivided the powers of government, with such power in each division or department or branch as they deemed expedient for the good of the public, and local convenience of the citizens. Among these is the legislative branch, invested with a vast field of power, and in fact all legislative power not prohibited by the organic law. These great powers are exercised within legislative discretion, and, although we know by experience that this exercise of power is sometimes abused, yet this seems inseparable from the nature of human institutions. No man or men have yet been able to establish a government capable of accomplishing its legitimate ends, and also incapable of some inconvenience and mischief. In our system a prime object has been to give the people all the rights of persons and things that are consistent with such restraint as are necessary for the public good and general welfare, and among these is the principle of local self-government; and we were impressed by all the parties to this controversy, during the argument, with their avowed devotion to that principle. Prior to 1875 the principle of local self-government was absolutely safe and secure by provisions of the organic law of the State, but during that year a constitutional convention convened, and, for reasons presumably satisfactory to itself, amended article 7 of the constitution, in these words: "Section 14. The General Assembly shall have full power by statute to modify, change or abrogate any and all of the provisions of this article, and substitute others in their place, except sections seven, nine and thirteen." Thus was placed at the will and discretion of the Assembly, the political branch of the State government, the election of county officers, the duty of county commissioners, the division of counties into districts, the corporate powers of districts and townships, the election of township officers,

the assessment of taxable property, the drawing of money from the county or township treasury, the entry of officers on duty, the appointment of Justices of the Peace, and all charters, ordinances, and provisions relating to municipal corporations. These important subjects were fixed and distinctly settled in the constitution before the adoption of said amendment, and the present controversy is one of the practical results of such change in the constitution. With the motives and wisdom of the adoption of said Section 14, Article 7, this Court has nothing to do.

The Act of 1897, Chapter 150, to amend the charter of the city of Wilmington, provides "that there shall be elected by the qualified voters of each ward one Alderman only, and there shall be appointed by the Governor one Alderman for each ward, and the Board of Aldermen thus constituted shall elect a Mayor according to laws declared to be in force by this Act," and repeals all laws in conflict with this Act. Is that Act constitutional or void? That is the pivotal point in this contention. It seems not to be denied that under Article 7, Section 14, the Legislature may not only "modify, change or abrogate" all the enumerated Sections of said Article, but may "substitute others in their place;" but it is argued that the Act of 1897, Chapter 150, assumes more power than is authorized by Article 7, Section 14. How it exceeds the authority, is not clearly pointed out. There is no limitation on the power in said Section 14, and we have found none elsewhere in the constitution. Constitutions are general in their provisions, and do not enter into details. Certainly, ours has not done so in this instance. It is urged, however, that the exercise of the power now claimed under the Act would infringe upon general principles of law, and would deprive the people, in this particular respect, of the power of local self-government. A brief answer would seem to be, "*Lex ita scripta est.*" What kind of substitute could

the Legislature make without subjecting itself to the same objection?   Let us suppose that in pursuance of Section 14 the Legislature should "modify and change" Section 12 of Article 7, and insert therein these words: "There shall be elected by the qualified voters of each ward one Alderman only, and there shall be appointed by the Governor one Alderman for each ward."   The validity of that substitution would not be questioned.   Is it, then, any more efficacious in that form than the same language in the Act under consideration, each provision depending solely upon said Section 14, Article 7, for its vitality?   The people, then, by adopting Article 7, Section 14, have clearly invested their representatives in the Legislature with the power in question, to be exercised at their discretion, with which the Court cannot interfere.   We had some comment on Article 8, Section 4, as controlling the subject before us.   That Section does refer to cities and towns, by its very terms.   It requires the Legislature to provide for the organization of cities and towns, and to restrict the power of such cities and towns in the particulars therein enumerated.   There is no restraint upon the Legislature, and no conflict with Article 7, Section 14.   This Section 4 is an exact copy of Article 8, Section 9, of the constitution of New York.   It was held in that State, and several others having the same constitutional provision, that what the restrictions should be upon the enumerated powers, and how they shall be imposed, are subjects left to the discretion of the legislative department, with the exercise of which the Courts cannot interfere.   We are led, then, to conclude, upon the language of Section 14, and upon some of the best text writers, and upon the recognition of the principle we are announcing by this Court, that the Act of 1897, Chapter 150, is constitutional and valid.   *Mills* v. *Williams*, 33 N. C., 558; *Dare County* v. *Currituck County*, 95 N. C., 189; *Lilly* v. *Taylor*, 88 N. C., 489; *Wood* v. *Town*

*of Oxford,* 97 N. C., 227; *McCormac* v. *Commissioners,* 90
N. C., 441; *Brown* v. *Commissioners,* 100 N. C., 92; *Wallace*
v. *Trustees,* 84 N. C., 164.

Much of the learning with which we were entertained on
the argument refers to the law prior to, and unlike, Article
7, Section 14. Some of the briefs filed draw in question the
power of the Legislature to delegate its authority in the
premises to the Governor, as is done in the Act we have dis-
cussed. This cannot now be seriously disputed in North
Carolina. We refer to one case which fully sets that matter
at rest, and which has been followed uniformly in other
cases and to the same effect. *Thompson* v. *Floyd,* 47 N. C.,
313. The Legislature, when not prohibited, acts through
agents,—either individuals or corporate bodies. Practically,
it could not well discharge its duty without such agencies.

Our opinion is that defendant Wright, and his Board of
Aldermen are the rightful owners of the offices in the city
government now occupied by them.

Reversed.

CLARK, J. (concurring): I concur in the result, but not
in some of the views expressed in the opinion. Under the
amended constitution of 1875, the Legislature felt empow-
ered to elect the magistrates for each county, and to intrust
them with the duty of electing the County Commissioners,
and this was acted on for nearly two decades. It follows
that they might have intrusted to such magistrates the duty
of choosing Town Commissioners as well as County Com-
missioners, or have selected and empowered the Governor,
or other agency, instead of the magistrates, to appoint the
Commissioners of Towns and Counties. This is a broad
duty to be intrusted to the Legislature, yet the constitution
of 1875 clearly gave the Legislature unrestricted powers in
such matters. I am, therefore, of opinion that the Act
empowering the Governor to appoint a portion of the Town

Commissioners of Wilmington was within the scope of the powers intrusted to their discretion by the constitution. Whether it is more the subject of criticism that the constitutional convention of 1875 saw fit to intrust to the Legislature powers over local government, vast, but justifiable, in their opinion, from conditions well known and thoroughly considered, and which were ratified by submission to the ballot box, or that a Legislature which deemed that such powers were no longer necessary as to county magistrates and Commissioners, should adopt the system for the first time as to one or two municipalities,—this is for consideration in other forums. It is not for us to criticise, but to construe what has been enacted by constitutional conventions, or, within their powers, by Legislative assemblies.

MONTGOMERY, J. (concurring): I concur in the opinion of the Court that the defendants are entitled to hold the offices they are now in the possession of. In this forum, however, I do not wish to be considered as passing any criticism either upon the action of the convention of 1875, or that of the General Assembly of 1897, in its enactment of the law which has been considered by the Court in this case.