JAMES RHYNE v. E. H. LIPSCOMBE.

(Decided February 22, 1898).

*Jurisdiction — Superior Courts — Circuit or Inferior Courts—General Assembly—Power to Establish Courts and Allot Jurisdiction Below Supreme Court—Appeal from Justices of the Peace—Constitutional Law.*

1. The Superior Courts and Courts of Justices of the Peace were created by the Constitution (Section 2, Article IV), and the General Assembly cannot abolish them.

2. While the General Assembly may, under Section 12 of Article IV of the Constitution, allot and distribute the jurisdiction of the courts below the Supreme Court, it must be done without conflict with other provisions of the Constitution.

3. In construing legislation establishing courts inferior to the Supreme Courts and affecting the jurisdiction of the Superior Courts, the term "Superior Court" must be interpreted in the sense it had at the time of the adoption of the Constitution which established such court, which was that it was the highest court in the State next to the Supreme Court and superior to all others, from which alone appeals lay direct to the Supreme Court, and possessed of general jurisdiction, criminal as well as civil, and both in law and equity.

4. The Superior Court cannot, under Section 12, Article IV of the Constitution, be deprived of the pre-eminence and superiority attaching to it at the time of its adoption by the Constitution or shorn of either its criminal or civil jurisdiction without conflict with the constitutional provisions creating it; and, while its jurisdiction may be made largely appellate by conferring such part of its original jurisdiction on such inferior courts as the General Assembly may provide, its jurisdiction must be retained by original or appellate process.

5. The allotment and jurisdiction provided for in Section 12 of Article IV of the Constitution cannot be such as to take from Justices of the Peace the jurisdiction conferred by Section 27 of such Article, or to repeal the right of appeal given by that section, both in criminal and civil actions, to the Superior Court from the Courts of Justices of the Peace.

6. Subject to the restrictions that it cannot deprive either Justices of the Peace of the jurisdiction conferred by the Constitution or the Superior Court of its constitutional position as superior to all other inferior courts and having at least appellate jurisdiction of all matters from which appeals would lie to the Supreme Court, the General Assembly may create courts inferior to the Supreme Court with all, or such part as it thinks proper, of the original criminal or original civil jurisdiction above that given by the Constitution to Justices of the Peace (of which, even, concurrent jurisdiction may be given), provided that the right of appeal to the Superior Court, as in all other cases where an appeal lies, shall not be taken away.

7. Appeals from such courts, inferior to the Supreme Court, as the General Assembly may establish, lie (mediately or immediately as the General Assembly may prescribe), to the Superior Courts and thence only to the Supreme Court.

8. Where no appeal to the Superior Court from a circuit, criminal or other inferior court is prescribed by the statute creating such court, and where an appeal would otherwise lie, a *certiorari* in lieu of appeal will issue from the Superior Court as in other cases in which an appeal is not provided for. (Section 545 of *The Code*).

9. Section 2 of Chapter 6, Acts of 1897, conferring upon the Judge of the Circuit Court of Buncombe, Madison, Haywood and Henderson counties concurrent equal jurisdiction, power and authority with the judges of the Superior, to be exercised at Chambers or elsewhere in said counties, "in all respects as judges of the Superior Courts of this State have such power, jurisdiction and authority," is unconstitutional and void in that by its allotment of jurisdiction to such court it conflicts with the provisions of the Constitution, deprives the Superior Court of its Constitutional position and appellate jurisdiction, and, in effect, creates a Superior Court and judge by legislative enactment contrary to Sections 10, 11 and 21 of Article IV of the Constitution.

CIVIL ACTION tried before a Justice of the Peace, from whose judgment there was an appeal to the Superior Court of BUNCOMBE county. The Criminal Circuit Court of Buncombe, Madison, Haywood and Henderson counties assumed jurisdiction, and the case was tried before *Ewart, J.*, and a jury at June Term, 1897, of said Circuit Court for Buncombe county. There was a verdict

for the plaintiff, which the defendant moved to set aside upon the ground that the court had no jurisdiction. The motion was denied, and the defendant appealed from the judgment rendered on the verdict.

*Messrs. J. C. Martin* and *George A. Shuford* for appellant.

*Mr. James H. Merrimon* for appellee.

CLARK, J.: The Constitution, Article IV, Section 2, establishes the Supreme Court, Superior Courts and Justices of the Peace, and authorizes the Legislature to create other courts inferior to the Supreme Court. Section 12 of the same article provides that the General Assembly shall have ño power to deprive the Judicial Department of any power or jurisdiction which rightfully pertains to it, but that it " shall allot and distribute that portion of this power and jurisdiction, which does not pertain to the Supreme Court, among the other courts prescribed in this Constitution, or which may be established by law, in such manner as it may deem best . . . . . *so far as the same may be done without conflict with other provisions of this Constitution.*"

Under the Constitution of the United States, Article III, Section 1, the Supreme Court alone is created, and all other courts are the creatures of Congress, hence Congress has created and abolished districts, and also created and abolished a system of circuit courts at will. But under our State Constitution the Superior Courts and courts of the Justice of the Peace are created by the Constitution itself, and the General Assembly cannot abolish them. The term "superior court" had a well defined signification at the time of the adoption of the Constitution, and the language of that instrument

must be taken as referring thereto. The Superior Court was considered of so much importance that, by Sections 10, 11 and 21, Article IV, the people are guaranteed the right to elect the judges, their terms are fixed, and it was provided that each judge thereof shall reside in the district for which he is elected, that the judges shall rotate, and that no judge thereof shall hold the courts of the same district oftener than once in four years, and that at least two terms thereof shall be held annually in each county, and by Section 22 these Superior Courts shall at all times be open for the transaction of all business except the trial of issues of fact by a jury. Sections 16 and 23 give the people the right to elect the solicitors and clerks of said court, and also fixes their terms. While the General Assembly is given the power to allot and distribute the jurisdiction of the courts below the Supreme Court, this is with the important limitation that it must be done "without conflict with other provisions of this Constitution." This renders it essential to consider what is the inherent nature of the Superior Courts created by those "other provisions" of the Constitution itself, which treats them with so much consideration, prescribing the election and terms of whose officers, besides the other provisions above recited. The General Assembly may allot and distribute the jurisdiction below the Supreme Court, but it cannot in doing so create new courts with substantially the same powers as the Superior Courts and make the officials thereof elective otherwise than by the people, subject to be abolished by legislative enactment, and hence without independent tenure of office as prescribed by the Constitution and freed from the provisions as to rotation, the residence of the judges and the requirements as to two terms annually in each county, and being always

RHYNE *v.* LIPSCOMBE.

open.   All this cannot be done simply by creating new Superior Courts, styling them " Circuit Courts " or " Criminal Courts " or otherwise.

The United States Constitution, 6th and 7th Amendments, provide for the right of trial by jury in the United States Courts. It has been held that the word "jury"must be interpreted in the sense it had at the time of the adoption of those amendments, and, hence, that in the Federal courts a jury must consist of 12 men and their verdict must be by unanimity because this was the accepted meaning of the right of trial by jury at that time, notwithstanding this meaning no longer universally attaches as many States provide now for juries less than twelve and have abolished the requirement of unanimous verdicts.   *Am. Pub. Co.*, v. *Fisher*, 166 U. S. 464. This has also been held under the State Constitutions which provide for trial by jury, except in those States whose constitutions expressly permit juries less than 12 or dispense with the common law requirement of unanimity.   Cooley Const. Lim. (6th Ed.) 390, 395 and cases therein cited; 1 B. & H. C. R. Cases, 482 and notes.

Applying this reasonable and settled rule of construction to the Superior Court established by the Constitution, and fenced about, as its importance demanded, by so many provisions in the Constitution, what was the " Superior Court " as the term was well understood at the time of the adoption of the Constitution ?   It meant the highest court in the State, next to the Supreme Court and superior to all others, from which alone appeals lay direct to the Supreme Court, and possessed of general jurisdiction, criminal as well as civil and both in law and equity.   It cannot be deprived of that superiority and pre-eminence, or deprived of either its criminal or civil jurisdiction without conflict with the constitu-

tional provisions creating it.   That jurisdiction may be
made largely appellate by conferring such part of its
original jurisdiction on inferior courts as the General
Assembly may provide but it cannot retrench the extent
of its jurisdiction which it must retain either by original
or appellate process.   It is made flexible, so that more
than two terms can be held in each county annually if
the General Assembly thinks proper which can also in-
crease the number of the Superior Court judges with
the increase of  population and legal business in the
State, but when they are increased all the officers of
such courts must be elected by the people at the next
general election and they must hold for the fixed term
named in the Constitution and the judges must rotate
in regular succession.   The constitutional guarantees
and the inherent nature and general jurisdiction of the
Superior Court, recognized by the historical and legal
meaning of the term at the adoption of the constitution,
can not be held revoked and discarded by the incidental
authority to the legislature to create criminal courts in
cities and " other inferior courts " (which the Constitu-
tion did not deem of enough importance even to name)
and to allot the jurisdiction among them.   Even this
provision is guarded, as already stated, by the require-
ment that the allotment shall not conflict with the other
provisions of the Constitution.   Nor can the allotment
be such as to take from the Justices of the Peace the
jurisdiction conferred by Section 27 of Article IV., nor
to repeal the right given by that section, of appeal both
in criminal and civil actions to the Superior Court from
the court of Justices of the Peace.   There are these
restrictions and the further inherent one, as above stated,
that the Superior Court is at the head of the court sys-
tem below the Supreme Court and that from it alone

appeals can come up to this court. From the Inferior Courts therefore appeals must go to the Superior Court of the county and not direct to this Court. Subject to these constitutional restrictions, the General Assembly may allot the jurisdiction below the Supreme Court. It may create criminal courts or circuit courts, city courts or any other courts and give them all, or such part as it thinks proper, of the original criminal or original civil jurisdiction above that given by the Constitution to Justices of the Peace, and even as to that it may confer concurrent original jurisdiction with the Justices of the Peace (for their jurisdiction is not exclusive) but if it gives such courts concurrent jurisdiction, civil or criminal, of such portion of the original jurisdiction which is left to be exercised by the Superior Court, still in such cases an appeal must lie from such Inferior or Intermediate courts to the Superior Court, as in all other cases in which there is a right of appeal, for the General Assembly cannot, "without conflict with other provisions of the Constitution," either deprive the Justices of the Peace of the jurisdiction conferred on them by the Constitution or deprive the Superior Courts of their constitutional position as Superior Courts over all other inferior courts, and with at least appellate jurisdiction of all matters from which appeals would lie to this court. While appeals have been often brought to this Court direct from Criminal Inferior Courts, the right to do so has never been adjudged by this Court.

From these considerations, it follows that appeals lie from the Circuit or Criminal, or other Inferior Courts (mediately or immediately as the General Assembly may prescribe) to the Superior Courts and thence only to this Court. Judgments heretofore rendered in such courts (within the jurisdiction conferred by the General

Assembly) and not appealed from are necessarily valid. Where appeals have been taken direct from such Criminal or Circuit Courts to this Court, the objection not having been taken, the decision of this Court is valid. As to matters hereafter adjudged in the Criminal or Circuit Courts, the right of appeal given by statute direct to this Court, being unconstitutional, must be disregarded. Where no appeal to the Superior Court from such court is prescribed by statute, if an appeal would otherwise lie, a *certiorari* in lieu of appeal will issue from the Superior Court, as in other cases in which an appeal is not provided for (*The Code*, Section 545; *Thompson* v. *Floyd*, 47 N. C., 313; *State* v. *Herndon*, 107 N. C., 934; *King* v. *Railroad*, 112 N. C., 318, and cases cited in Clark's Code, 2d Ed., p. 550), until the Legislature shall amend the statute so as to provide a system of appeals from the criminal, circuit, or other inferior courts to the Superior Court of the county in which any action shall be pending.

The provision in Section 1, chapter 6 of the Acts of 1897 which confers upon the Judge of the Circuit Court of Buncombe, Madison, Haywood and Henderson counties "concurrent, equal jurisdiction, power and authority with the judges of the Superior Courts of this State to be exercised at chambers or elsewhere, in said counties, *in all respects* as judges of the Superior Courts of this State have such power, jurisdiction and authority," is unconstitutional and void. It is in effect the creation of a Superior Court and Judge, by legislative enactment, by the easy process of denominating him a circuit judge, disregarding the constitutional provision which gives to the people the right to elect the Judges, solicitors and clerks of such courts, and which also confers a

121—42

fixed term of office on them, and requires the judges to rotate with the other Superior Court judges from a wise provision of public policy engrafted in the Constitution. The Act is further in derogation of the Constitution in that under the terms of Section 27, Article IV, this case having originated before a Justice of the Peace, an appeal lay from his judgment to the Superior Court, and the appeal would not lie to the Circuit Court "without conflict with other provisions of the Constitution." The plea to the jurisdiction should have been sustained. From the transcript it appears that the appeal from the justice was in fact regularly and properly taken to the Superior Court of Buncombe county, the assumption of jurisdiction thereof by the aforesaid Circuit Court was without warrant of law and the proceedings therein had were *coram non judice.* The judgment and proceedings in said Circuit Court are adjudged null and void, and the cause is remanded to the Superior Court of Buncombe county that further proceedings may be had according to law.

The number of Superior Court judges in North Carolina in proportion to population and business is greatly less than in any other State in the Union. In comparison with some of our sister States, we have possibly not a fourth or even a sixth as many in proportion to wealth and population. Probably it is an opinion of the inadequacy of the judicial force which has induced the General Assembly to create Superior Court Judges by legislative enactment, to hold at the legislative pleasure by the device of styling them "circuit" judges. This it cannot do. It is within the legislative discretion to relieve the pressure on the Superior Courts either by conferring a portion of the original jurisdiction of the Superior Courts (either exclusively or concurrently with

the Superior Courts), upon criminal, or circuit or other inferior courts, with the right of appeal, however, to the Superior Courts, or by the more direct process of frankly increasing the number of Superior Court Judges (elected by the people, with fixed terms and rotating), according to what it shall deem the needs of the public business demand.

Judgment quashed, and the cause is remanded to the Superior Court.                                    Remanded.

FURCHES, J., concurring : 'I concur in the well considered opinion of the Court delivered by Justice Clark. But as the case involves an important constitutional question, I deem it not improper that I should briefly give expression to some of the reasons I have for concurring in this judgment.

The Superior Courts are creatures of the Constitution. They cannot be abolished by the Legislature. They are permanent institutions. The Constitution provides and requires the State to be divided into Judicial Districts. These districts may be increased, but when this is done it adds another or other districts by reducing the territory of one or more of the districts as they then existed. The new district then becomes one of the judicial districts provided for by the Constitution. This new district, when created, becomes a Superior Court district— a part of the system of the Superior Courts of the State. It is then entitled to the same rights and subject to the same laws as the other judicial districts.

While the Constitution authorizes the Legislature to increase the number of Superior Court districts, it does not authorize it to change the mode of electing its judge. This must be by the people, and all the judges must be elected under the same system—all must be elected

alike. If a part are elected by the whole State (and this is the law now), all must be elected by the whole State. It cannot be that all the judges but one shall be elected by the whole State, and that one elected by a single district. If this were so, the result would be that the electors of this *one* district would have two votes each. They would have the same voice in electing the other twelve judges that the voters of the other eleven had, and then they would have the election of one judge that the others had no right to vote for. There must be uniformity. As the law is now, the whole people of the State must elect. If it be changed to the district system, then the whole people of the district must elect.

The Constitution provides that "every judge of the Superior Court shall reside in the district for which *he* is elected." This is a clear-cut inference that there is to be but *one* Superior Court judge for any one district. And if Judge Ewart is a Superior Court judge, as he resides in the district of another judge, this is a violation of the Constitution.

We all understand what is meant by the term "Superior Court Judge," because it indicates his duties and powers. But if a judge be clothed with all the powers and duties of the Superior Court judge, he is a Superior Court judge, although he may be called by some other name. Such legislation is an excrescence upon the Superior Court system of the State.

If more courts are needed, it is easy to provide them, in a constitutional way, by creating more judicial districts, and more terms in counties that need them.