STATE OF NORTH CAROLINA ON RELATION OF D. L. BOULDIN v.
W. A. DAVIS.

(Filed 20 November, 1929.)

1. **Elections I a—It is not necessary that relator in action to try title to office be candidate for office contested.**

   It is not required that a resident taxpayer and qualified voter of a municipality be a competitor of the present incumbent in an election to the municipal office in order for him to be a relator with the approval of the Attorney-General of the State in proceedings in the nature of *quo warranto*. C. S., 869, 870, 871.

2. **Same—Superior Court has original jurisdiction of action in nature of quo warranto to try title to office.**

   The jurisdiction of the courts to entertain action in the nature of *quo warranto* existed at common law and does not exclusively rest by statute, and where a municipality is authorized by certain provisions in its charter to determine the result of an election held for the election of its own officers, recount of the votes, etc., it does not oust the jurisdiction of the Superior Court to entertain original jurisdiction of the proceedings in the nature of *quo warranto* to try the disputed title to the office of one of its officials. C. S., 869. The provisions of the Federal and State Consti-tutions having reference respectively to the rights of Congress and the State Legislature to determine the rights of contestants to seats in the respective bodies have no application.

3. **Same—In this case held: charter of city did not prescribe that action to try title to office be first brought before commissioners.**

   In this case *held:* that a provision in the charter of a municipal cor-poration giving to the city commissioners the authority and right to de-termine the question of a contested election of one of its officers did not attempt to deprive the Superior Court of its jurisdiction, or make it deriva-tive or subordinate to the action of the municipal authorities, but at most to provide a cumulative remedy. As to whether the Legislature may by statute deprive the courts of their original jurisdiction in proceedings in the nature of *quo warranto* to determine title to office, *quære?*

APPEAL by defendant from *Shaw, J.,* 21 September, 1929.   From GUILFORD.   Affirmed.

The relator alleges that he is a resident, taxpayer, and qualified voter in Ward No. 2, in the city of High Point; that the defendant is a resident and citizen of High Point; that the Attorney-General has granted the relator leave to bring this action; that an election of councilmen was held in the city on 7 May, 1929, the two candidates in Ward No. 2 being the defendant and T. C. Johnson; that although Johnson received a majority of the votes cast in the election, the registrar and judges of election declared the defendant elected to the office; and that the defendant has unlawfully assumed to qualify and has usurped the office and is unlawfully receiving the fees and emoluments.

The defendant demurred *ore tenus* to the complaint on the following grounds: 1. The charter of the city (sec. 31, subsec. 5) is a public act and the courts must take judicial notice of its provisions, among which is this: "It (the city council) shall be the judge of the qualification and election of its members, and shall have authority to recount the votes for any of its members and to correct the result which may have been declared in the event notice of a contest shall be duly given." 2. The city council is a *quasi*-judicial body, having sole jurisdiction of this inquiry, or, in any event, primary jurisdiction, and that the Superior Court has no jurisdiction until the plaintiff has prosecuted his cause before the city council. 3. That the complaint fails to state a cause of action in that it does not allege that the plaintiff prosecuted his cause before the city council before instituting this action.

The demurrer was overruled and the defendant excepted and appealed.

*King, Sapp & King, Shuping & Hampson and Hoyle & Harrison for plaintiff.*

*T. J. Gold, Z. I. Walser, Clifford Frazier and Sidney S. Alderman for defendant.*

ADAMS, J.   The relator does not allege that he is entitled to the office or to any of its emoluments; but this allegation is not essential to the maintenance of the action.   A civil action in the nature of *quo warranto* may be brought by the Attorney-General in the name of the State upon his own information or upon the complaint of a private party. C. S., 869, 870.   A relator need not be a contestant for the office, but he must be a citizen and taxpayer within the jurisdiction over which an incumbent of the contested office exercises the functions prescribed by law.   *Foard v. Hall,* 111 N. C., 369; *Hines v. Vann,* 118 N. C., 3; *Houghtalling v. Taylor,* 122 N. C., 141; *Jones v. Riggs,* 154 N. C., 281; *Midgett v. Gray,* 158 N. C., 133.

The charter of the city of High Point provides, not only that the city council shall be the judge of the qualification and election of its members, but that the charter shall be deemed a public act, judicial notice of which shall be taken in all courts without the necessity of pleading the act or reading it in evidence.

This is a proceeding in the nature of *quo warranto*, instituted in the Superior Court without reference to the prosecution of any asserted remedy before the city council or any allegation of an application to the city council to adjudge the election. The appellant contends that by virtue of the charter the trial court was affected with judicial notice of these facts, and that the right of the city council to judge of the election and qualification of its members excludes or ousts the jurisdiction of the Superior Court.

On this point we are referred by the appellant to *Britt v. Board of Canvassers,* 172 N. C., 797, and to *Alexander v. Pharr,* 179 N. C., 699, in the first of which it was held that Article I, sec. 5, of the Constitution of the United States withdraws from the courts and vests in Congress the power to judge of the election and qualification of its own members, and in the second of which it was held that similar power is conferred upon the General Assembly of North Carolina. Constitution, Art. II, sec. 22. Just as Congress is one of the coördinate branches of the Federal Government, the General Assembly is one of the coördinate branches of the State Government. The doctrine upon which rests the separation of executive, legislative and judicial powers is thus expressed in *Kilbourn v. Thompson,* 103 U. S., 168, 190, 26 Law Ed., 377, 387: "It is believed to be one of the chief merits of the American system of written constitutional law, that all the powers entrusted to governments, whether State or National, are divided into the three grand departments of the executive, the legislative, and the judicial. That the functions appropriate to each of these branches of government shall be vested in a separate body of public servants, and that the perfection of the system requires that the lines which separate and divide these departments shall be broadly and clearly defined. It is also essential to the successful working of this system, that the persons entrusted with power in any one of these branches shall not be permitted to encroach upon the powers confided to the others, but that each shall by the law of its creation be limited to the exercise of the powers appropriate to its own department and no other."

This doctrine has no application to the point in question. But the appellant contends that there is no common-law jurisdiction in any courts under the Code of Civil Procedure to try title to an office and that the existing remedy is purely statutory, *quo warranto* and information in the nature of *quo warranto* having been abolished. C. S.,

869. The writ of *quo warranto* was a common-law process. It was an original writ in the nature of a writ of right prosecuted at the suit of the king against one who usurped or claimed franchises or liberties to inquire of what right he claimed them. It fell into disuse and was supplied or superseded by an information in the nature of *quo warranto* which in its origin was "a criminal method of prosecution, as well to punish the usurper by a fine for the usurpation of the franchise as to oust him, or seize it for the crown." 3 Bl., 263. It was subsequently applied to the purposes of trying the civil right, and was a "part of that mass of remedies for wrongs which was brought over to this country by the early English settlers. 22 R. C. L., 656; 32 Cyc., 1412; *Ames v. Kansas,* 111 U. S., 449, 461, 28 Law Ed., 482, 487; *Brooks v. State,* 51 L. R. A. (N. S.), 1126; *S. v. Hardie,* 23 N. C., 42; *Brown v. Turner,* 70 N. C., 93; *S. v. Norman,* 82 N. C., 687.

There can be no doubt that the Superior Court has jurisdiction of actions to try the title to an office. 1 Rev. Sts., ch. 97; Rev. Code, ch. 95; Battle's Rev., 234; Code, secs. 603, 616; Revisal 1905, secs. 826, 833; C. S., sec. 869, *et seq.* It was said in *Saunders v. Gatling,* 81 N. C., 298, that although the proceeding by information in the nature of *quo warranto* has been abolished, the remedy to be pursued when the controversy involves the validity of an election to public office is by a civil action in the nature of a writ of *quo warranto*—from which the conclusion may be drawn that the statutory change relates more directly to the form than to the substance of the action. It is not necessary to decide, and we express no opinion on the question, whether under our Constitution an amendment to the charter of a municipal corporation can deprive the Superior Court of its jurisdiction in actions of this character. *Rhyne v. Lipscombe,* 122 N. C., 650. In other jurisdictions there is an apparent conflict of authority. 20 C. J., 215, sec. 273(2); 9 R. C. L., 1160, sec. 150; *Love v. Cosgrave,* 26 L. R. A. (N. S.) (Neb.), 207, and annotation. Many of the cases are cited in the well considered briefs of counsel, but an effort to differentiate or to reconcile them would be a superserviceable task. We believe the better rule to be the one given by two of the leading textwriters on Municipal Corporations. Dillon says: "It is not unusual for charters to contain provisions to the effect that the common council or governing body of the municipality 'shall be the judge of the qualifications' or 'of the qualifications and election of its own members,' and of those of the other officers of the corporation. What effect do such provisions have upon the jurisdiction of the Superior Courts? The answer must depend upon the language in which these provisions are couched, viewed in the light of the general laws of the State on the subjects of contested elections and *quo warranto.* The principle is, that the jurisdiction of the court

remains unless it appears with unequivocal certainty that the legislature intended to take it away. Language like that quoted above will not ordinarily have this effect, but will be construed to afford a cumulative or primary tribunal only, not an exclusive one." The same principle is maintained by McQuillin: "Thus a charter provision that the council 'shall judge of the qualifications, election and return of the members thereof,' it has been held, does not make the council the final judge, and, hence, the courts may determine the right to the office of councilman on an information in the nature of *quo warranto*. The jurisdiction of the court remains unless it clearly appears that the intention was to take it away." 2 Municipal Corporations (2 ed.), sec. 491. We find in the charter no "clear intent" to deprive the Superior Court of its jurisdiction in the premises. Conceding, without deciding, the power of the Legislature to confer exclusive jurisdiction upon the city, we conclude that the amendment construed most favorably for the appellant is cumulative only, and that the Superior Court had jurisdiction to proceed to judgment. See *S. v. Carter*, 194 N. C., 293; *Harkrader v. Lawrence*, 190 N. C., 441. We are likewise of opinion that the city council has no primary jurisdiction and that the jurisdiction of the Superior Court is not merely supervisory of matters growing out of the council's departure from or transgression of the powers alleged to have been conferred. The original jurisdiction of the Superior Court has not been taken away, and its exercise cannot be subordinated to the action of the city council. The judgment overruling the demurrer is

Affirmed.