STATE ex rel J. M. TATE v. COMMISSIONERS OF HAYWOOD
COUNTY.

(Decided February 22, 1892.)

*Mandamus—Jurisdiction—Superior Court—Circuit Criminal
Court—Constitutional Law.*

1. Under the Statutes of this State the Superior Court alone has jurisdiction of *mandamus* proceedings.

2. While the General Assembly may, under the provisions of Section 12, Article IV, of the Constitution, give to any circuit court, or any other court it may erect, original jurisdiction, either exclusive or concurrent with the Superior Court of all matters, civil as well as criminal, arising in the county or counties for which such court is established, subject to the right of appeal therefrom to the superior court created by the Constitution provided, as to concurrent matters such inferior Court first acquires jurisdiction, yet it cannot emasculate the Superior Courts by transferring the concurrent jurisdiction of cases, which have originated and are pending in them, downwards to the circuit or other inferior courts.

3. Section 2 of Chapter 6, Acts of 1897, providing that the Judge of Criminal Circuit Court for Buncombe, Madison, Henderson and Haywood Counties, in addition to the existing criminal jurisdiction, "shall have also, as to all civil business originating and pending in said counties, or either of them, concurrent, equal jurisdiction, power and authority with the judges of the Superior Courts to be exercised at chambers or elsewhere in said counties, in all respects as the judges of the Superior Courts have such power, jurisdiction and authority," is unconstitutional for the reason that, instead of being an allotment and distribution of a portion of the jurisdiction of the Superior Courts provided for in Section 12 of Article IV of the Constitution, it is, *pro tanto*, an abolition of the Superior Courts.

4. The Judge of the Criminal Circuit Court of Buncombe, Madison, Henderson and Haywood Counties has no jurisdiction of a proceeding in *mandamus* under Section 2, Chapter 6, Acts of 1897, although the case was entitled in and the summons issued from the Superior Court but made returnable before such Criminal Circuit Judge.

APPLICATION for *mandamus* to compel the defendants, the Board of Commissioners of Haywood County, to levy special tax for working the public roads of said

county authorized by Chapter 249, Acts of 1897, heard before *Ewart, Judge* of the Criminal Circuit Court of Buncombe, Madison, Henderson and Haywood counties at Chambers on the 24th day of August, 1897. The summons was entitled in the Superior Court of HAYWOOD Court and issued by the Clerk thereof. His Honor rendered judgment for the plaintiff and the defendant appealed, assigning error as follows:

"That his Honor held (1) That he had jurisdiction of the cause and the subject matter thereof, and (2) That the Commissioners of Haywood County had no discretion and were compelled to levy the tax."

*Mr. Geo. H. Smathers* for plaintiff.
*Messrs. W. T. Crawford* and *A. C. Avery* for defendants (appellants).

CLARK, J.: This is an action instituted in the Superior Court of Haywood County returnable before the Judge of the Circuit Court of Buncombe, Madison, Henderson and Haywood Counties, in which a *mandamus* is asked against the defendant commissioners. Under our statutes, the Superior Court alone has jurisdiction of this cause of action. The plea to the jurisdiction was overruled upon the terms of Section 2, Chapter 6, of the Acts 1897 which provides that "The Judge of said Circuit Court, in addition to the criminal jurisdiction he now has, shall have also as to all civil actions and special proceedings and all civil business originating and pending in said four counties, or either of them, concurrent equal jurisdiction, power and authority with the Judges of the Superior Courts of this State, to be exercised at chambers or elsewhere in said counties, in all respects as the Judges of the Superior Courts of this State have

such power, jurisdiction and authority." As pointed out in *Rhyne* v. *Lipscombe*, at this term, this is to create a Superior Court judge without the observance of the constitutional provision that such judge shall be elected by the people, for a term of eight years, and shall rotate with the other Judges. This section gives him the same power, jurisdiction and authority *in all respects* as a judge of the Superior Court, and of all civil business originating and pending in said four counties, of which the Superior Court has jurisdiction, thus transferring to said circuit court jurisdiction even of all matters originating or pending in the Superior Courts of said counties. This is not an allotment and division of jurisdiction as contemplated by Section 12 Article IV but is *pro tanto* an abolition of the Superior Courts. The provision in Section 10 that the General Assembly may reduce the number of Superior Court Districts, is to be construed in connection with Sections 21 and 23 fixing the terms of the Judges and Solicitors. It follows that, in the very improbable case of the reduction in the number of Districts, it can only be done at the expiration of the terms of those officers whose districts shall be abolished, their terms being guaranteed by the Constitution.

It is competent for the general assembly to give to said Circuit Court, or any other court it may erect, original jurisdiction, either exclusive or concurrent with the Superior Court, civil as well as criminal, of all matters which may originate in said counties subject to the right of appeal therefrom to the Superior Courts created by the constitution, and provided, as to concurrent matters, the circuit court first acquires jurisdiction, but it cannot transfer the concurrent jurisdiction of cases which have originated and are pending in the Superior Courts *down-*

*wards* to the circuit or other inferior courts. The intent expressed in Section 12 Article IV (which is an amendment to the Constitution) is not to abolish the Superior courts, but to authorize inferior courts thereto, with such jurisdiction as the general assembly may think proper to relieve, to that extent, the pressure upon the Superior Courts, just as the former courts of common pleas and quarter sessions had original jurisdiction of matters below the Superior Court and to some extent concurrent jurisdiction of certain matters with the Superior Courts, but appeals lay from said courts of common pleas and quarter sessions always to the Superior Courts. While the general assembly could therefore confer upon the circuit court such original jurisdiction, civil, as well as criminal, as it thought proper, either exclusive or concurrent with the superior court (subject always to the right of appeal to the Superior Court) that is not the purport and intent of this Act.

The General Assembly, with this view of the meaning of the Constitution, may and probably would establish intermediate criminal courts but it would hardly (though it has power to do so) confer on said courts jurisdiction of the graver offences as to which appeals would lie, and almost always would be taken, to the Superior Courts, with great increase, instead of a decrease of expense, and for the same reason the civil jurisdiction vested in such courts would probably be very limited, but that apportionment, however, is vested in the discretion of the General Assembly. It is true that in this case the summons, though entitled in the Superior Court, is made returnable before the Judge of the Circuit Court, but the very section under which he claims jurisdiction is unconstitutional by substituting him fully and in all respects in the place and stead of the Superior

Court.   The court cannot eliminate the unconstitutional provision which is its very warp and woof, and reform the section.    This can only be done by the general assembly.

Those who drafted and promoted this act were inadvertent to the position the Superior Court has always occupied in our judicial system, and which it retains under our present Constitution—a position which is in no wise impaired by the constitutional amendment (Art. IV, Section 12) which empowers the general assembly to allot and distribute a portion of its powers (exclusively or concurrently) to inferior courts, but without displacing the Superior Court from its legal and historical importance and superiority recognized by so many other provisions in the Constitution.   Even as a Superior Court Judge, which the Act substantially makes him, the act (Section 4) is of questionable validity in singling him out and authorizing him to order extra terms, since the Constitution, Article IV, Section 12, contemplates a system of regulating the methods of exercising the powers of the courts, under which, as to all other Superior Courts, extra terms are ordered by the Governor.

The Circuit Court never having acquired jurisdiction of the cause, the action must be dismissed.

Action dismissed.