M. L. MOTT, Solicitor Ninth Judicial District, v. BOARD OF COMMISSIONERS of Forsyth County.

(Decided June 7, 1900.)

*Mandamus—Constitutional Jurisdiction of the Superior Courts—Grand Jury—Solicitor.*

1. The constitutional jurisdiction of the Superior Courts, generally, may be stated as intermediate between the Supreme Court and the courts of Justices of the Peace.

2. While the General Assembly may allot and distribute that portion of the power and jurisdiction which does not pertain to the Supreme Court among other courts prescribed in the Constitution or which may be established by law, in such manner as it may deem best, *so far as the same may be done without conflict with the other provisions* of the Constitution, yet the Legislature may not deprive the Superior Courts of any constitutional provisions essential to their existence.

3. Grand juries are essential constitutional constituents appertaining to the system of Superior Courts, and may not be discontinued by the County Commissioners under legislative enactment of 1899, chap. 371.

4. *Mandamus* is the appropriate remedy to enforce the performance of the duty of drawing a grand jury for the Superior Court, and the Solicitor of the district is the proper officer to apply for it.

5. The Constitution is superior to ordinary legislation, and when they conflict, the latter must yield to the former; and the Court will so adjudge.

APPLICATION FOR MANDAMUS by the Solicitor of the Ninth Judicial District to require the Board of Commissioners of Forsyth County to draw a grand jury for the Superior Court, heard before *Starbuck, J.*, at Chambers in Winston, January 11, 1900.

Application refused, and plaintiff appealed.

*Messrs. Holton & Alexander,* for appellant.
*Messrs. Glenn & Manly,* for appellees.

FURCHES, J.   It is admitted that the relator, Mott, was elected Solicitor of the Superior Courts of the Ninth Judicial District in November, 1898, for a term of four years; was regularly inducted into that office; that said term of office has not expired, and that the county of Forsyth is one of the counties composing the Ninth Judicial District.

It is also alleged and admitted, that the defendants are the County Commissioners of Forsyth County, and that they have not drawn a grand jury for the Superior Court of that county since February, 1899, and while they say that the plaintiff never demanded the drawing of a grand jury for the Superior Court, they do not say that they would have drawn one if such demand had been made; and in fact, they substantially say that they would not have done so, as they justify their action in not drawing said jury under chap. 371, Acts of 1899, and that this act justified them in not drawing a grand jury, if the same is constitutional.   And as it was not expected that they, acting in this respect, as ministerial officers, should pass upon its constitutionality, they were therefore not to blame for obeying the Act of 1899, until it should be passed upon by the courts and declared unconstitutional. While it is contended that Mott, who is a resident and citizen of Wilkes County, is not the proper relator, the main and

MOTT *v.* COMMISSIONERS.

important question is the constitutionality of the Act of 1899. This is not only an important, but a serious question, and should receive a careful consideration, and after it has received this, if it should plainly appear to be unconstitutional, it will be our duty to so declare. That is, if we shall find that the provisions of the Act of 1899, in effect abolishing the grand jury of the Superior Court in Forsyth County, is plainly in conflict with the Constitution, it will be our duty to say so.

Where an Act of the Legislature is in conflict with the terms of the Constitution, they can not both stand, one must give way to the other; and as the Constitution is superior to the legislative act, the latter must give way to the former. "It is a proposition too plain to be contested, that the Constitution controls any legislative act repugnant to it." *Marbury v. Madison,* 1 Cranch, 49. But we do not think it necessary at this late day for us to undertake to establish the proposition that the Constitution is superior to ordinary legislative acts, and that when they conflict the latter must yield to the former.

Taking this to be conceded, we will proceed to the consideration of the constitutionality of the Act of 1899, so far as it deprives the Superior Court of Forsyth County of any grand Jury, and if upon this examination it shall be found to conflict with the Constitution the act must give way and not the Constitution.

The amended Constitution, Art. IV, sec. 12, authorizes the Legislature to establish courts inferior to the Supreme Court, "so far as the same may be done without conflict with the other provisions of this Constitution." So it must be held that the Act of 1899 is constitutional so far as it does "not conflict with" some of "the other provisions of the Constitution." But if it conflicts with any of the *other provisions of the Constitution* it is to that extent unconstitutional.

In considering this question it must be understood that it is not the constitutionality or unconstitutionality of the Criminal Court of Forsyth that is being considered, but only those provisions in the Act of 1899 establishing the Criminal Court of Forsyth, and other counties, that deprive the Superior Court of its grand jury. Is that part of said act which deprives the Superior Court of Forsyth of its grand jury in conflict with any of the other provisions of the Constitution? This is the question.

The Constitution, Art. IV, sec. 2, establishes a Supreme Court, Superior Courts and Courts of Justices of the Peace. Art. IV, sec. 8, defines the jurisdiction of the Supreme Court, and Art. IV, sec. 27, defines the jurisdiction of courts of Justices of the Peace. But the jurisdiction of the Superior Court is no where defined in the Constitution. Sec. 10 provides for the division of the State into judicial districts, for each of which a Judge shall be chosen, "and there shall be a Superior Court held in each county at least twice in each year." Sec. 11, provides that "every Judge of the Superior Court shall reside in the district for which he is elected. The Judges shall preside in the courts of the different districts successively, but no Judge shall hold the courts in the same district oftener than once in four years." Sec. 18, prohibits the reduction of the salaries of Judges during their terms of office, and sec. 22, provides that, "The Superior Courts shall be, at all times, open for the transaction of all business within their jurisdiction, except the trial of issues of fact requiring jury."

Thus it is seen that the Constitution establishes Superior Courts; that it has provided for dividing the State into judicial districts; that it has provided that each of these districts shall have a Judge, and that these Judges shall rotate, and shall not hold the courts of the same district oftener than

once in every four years; that they shall preside and hold a Superior Court in each county as often at least as twice a year, and that the Superior Courts shall at *all times* be open for the transaction of *all business* not requiring a jury.

These are constitutional requirements, and yet the Constitution has no where in express terms given the Superior Courts any jurisdiction. While the jurisdiction of all the other courts are prescribed and defined, not a word is said as to the jurisdiction of the Superior Courts. And yet we know that they have a jurisdiction, well known and understood by every lawyer, recognized and acted upon at every term of the Superior Court and of this Court. Indeed we can not conceive the idea that the Constitution would establish such courts as Superior Courts, next in dignity to the Supreme Court, and leave them without jurisdiction. Their constitutional jurisdiction, then, is to be found to include everything below the Supreme Court and above the courts of Justices of the Peace. These courts are established by the Constitution, and have their constitutional jurisdiction defined, of which they can not be deprived by the Legislature. This we think will be conceded. But as there is no express grant of jurisdiction to the Superior Courts in the Constitution, it remains to be seen what their jurisdiction is. We know they have a jurisdiction—that is known of all men—and as we have said, is constantly acted upon by this Court. How did they get this jurisdiction? If we can determine this, then we are in a position to ascertain and determine what it is, as the same reason that gives these courts their jurisdiction will determine what that jurisdiction is. This jurisdiction is to be found in the fact that these courts—Superior Courts—are not creatures of the Constitution but adoptions of the Constitution. The Constitution found them here, established institutions, with their jurisdiction well known and established,

and the Constitution, not wishing to make any change as to the jurisdiction of these courts, simply adopted them as they were. In this adoption it made provision for the holding of these courts by providing Judges to hold them, by requiring the Judges to reside in the district for which they were elected, by requiring them to rotate and to hold at least two terms a year in each county in the State, and that these courts—Superior Courts—should at all times be open for the transaction of *all business* that did not require the intervention of a jury.

Yet not a word is said as to what their jurisdiction should be. They were to do business, because these courts were to be open to the transaction of *all business* that did not require a jury. But it can not be inferred from this that they were not to have a jury, but the inference is otherwise—that they were to do business at term time where the Court had a jury—as we know this was the fact, as the terms of these courts were provided with Judges. We say these courts—these Superior Courts—were here before the Constitution, and became constitutional courts by adoption, and without any change or modification as to jurisdiction—a part of which was a grand jury. This was not the case with the other courts established by the Constitution. There were changes made in the jurisdiction of each of the other courts from what they were at the time of adopting the Constitution. This made it necessary to define their jurisdiction, and in doing this the jurisdiction of the Superior Courts were substantially defined. The whole law of the State was to be administered. The Superior Courts were courts of general jurisdiction, and when the jurisdiction of the other courts, which were special, were taken out, the remainder was left as the jurisdiction of the Superior Courts.

While the question now before the Court has not before

been directly presented, it has been discussed to some extent in several recent opinions of this Court.

In *Rhyne v. Lipscombe,* 122 N. C., 650, this Court said: "The Constitution, Art. IV, sec. 2, establishes the Supreme Court, Superior Courts and Courts of Justices of the Peace, and authorized the Legislature to create other courts inferior to the Supreme Court. Sec. 12, of the same Article, provides that the General Assembly shall have no power to deprive the judicial department of any power or jurisdiction which rightfully pertains to it, but that it shall allot and distribute that portion of the power and jurisdiction which does not pertain to the Supreme Court, among the other courts prescribed in the Constitution, or which may be established by law, in such manner as it may deem best   *   *   *   *so far as the same may be done without conflict with the other provisions* of this Constitution."   *   *   *   But under our State Constitution the Superior Courts and Courts of Justices of the Peace are created by the Constitution itself, and the General Assembly can not abolish them.

The term "Superior Court" had a well-defined signification at the time of the adoption of the Constitution, and the language of that instrument must be taken as referring thereto. *   *   *   "While the General Assembly is given the power to allot and distribute the jurisdiction of the courts below the Supreme Court, this is with the important limitation that it must be done 'without conflict with other provisions of this Constitution.'   This renders it essential to consider what is the inherent nature of the Superior Courts created by those 'other provisions' of the Constitution itself which treats them with so much consideration, prescribing the election and terms of whose offices, besides the other provisions above recited.   The General Assembly may allot and distribute the jurisdiction below the Supreme Court, but it can not in doing

so, create new courts with substantially the same powers as the Superior Courts, and make the offices elective, otherwise than by the people, subject to be abolished by legislative enactment, and hence without independent tenure of office, as prescribed by the Constitution and freed from the provision as to rotation, the residence of the Judges and the requirements as to two terms annually in each county, and being always open. All this can not be done by simply creating new Superior Courts or Criminal Courts, or otherwise. * * * Applying these reasonable rules of construction to the Superior Courts established by the Constitution, and fenced about, as its importance demanded, by so many provisions in the Constitution, what was the Superior Court, as the term was well understood, at the time of adoption of the Constitution? It means the highest court in the State next to the Supreme Court, and superior to all others, from which alone appeals lay directly to the Supreme Court, and possessed of general jurisdiction, criminal as civil and both in law and equity.* * * The constitutional guarantees, and the inherent nature and general jurisdiction of the Superior Courts, recognized by the historical and legal meaning of the term at the adoption of the Constitution, can not be held revoked and discarded by the incidental authority to the Legislature to create Criminal Courts in cities, and other inferior courts (which the Constitution did not deem of sufficient importance even to name), and to allot the jurisdiction among them. Even this provision is guarded, as already stated, by the requirement that the allotment shall not conflict with the other provisions of the Constitution."

We must be pardoned for quoting so extensively from this case of *Rhyne v. Lipscombe,* as it is so recent an expression of this Court and though written by Justice CLARK, was concurred in by the entire Court.

These extensive quotations seem to fully sustain the contention of the plaintiff. But this opinion was delivered in a case of a direct appeal from the Criminal Court to this Court, and not involving the question now before the Court, as to the jurisdiction of the Superior Court, and can not be claimed as an adjudication. But as it seems to us it is valuable for the strength of its argument upon the question now presented for our consideration and determination, and should go a long way in its determination. But there are expressions in that opinion such as "exclusive jurisdiction except as to the right of appeal," which defendants claim tend to weaken the argument of the case. But upon a careful review of the case it seems to us that these expressions were inadvertences. They were not necessary to the decision of the case—certainly that part which speaks of the exclusive jurisdiction, was not—and they are the only expressions in the opinion that seem to be in conflict with the contention of the plaintiff, and they are in conflict with the argument of the opinion. So we think we are justified in saying that they must have been inadvertences, as they are at entire variance with the whole argument of the opinion. The argument of the opinion in *Rhyne v. Lipscombe* is that the Superior Courts had a known and established jurisdiction at the adoption of the Constitution. That the Constitution adopted these Superior Courts, and made them constitutional courts, with their known and established jurisdiction, thereby adopting the jurisdiction they had at the adoption of the Constitution, and making such jurisdiction the constitutional jurisdiction of the court.

If this be true, and we think it is (and it is certainly the argument of *Rhyne v. Lipscombe*), then the contention of defendants and the construction they put upon *Rhyne v. Lipscombe* can not be correct. It is said in *Rhyne v. Lips-*

*combe* that "the Legislature can not take the constitutional jurisdiction from the Superior Courts." This can not be true if the Legislature can give the inferior courts original and exclusive jurisdiction of all criminal offences and take from the Superior Courts their jurisdiction. The Superior Courts are essentially courts of original jurisdiction, with very little appellate jurisdiction, and in almost all cases where it had appellate jurisdiction (from Justice's Courts) the trial is *de novo*, as if originally commenced in the Superior Court. And if its jurisdiction under the Constitution is original the Legislature has no power to take this jurisdiction from it.

Chief Justice MARSHALL, in speaking of the Constitution of the United States, and the Acts of Congress, uses this language: "If Congress remains at liberty to give this Court appellate jurisdiction where the Constitution has declared their jurisdiction shall be original, and original jurisdiction when the Constitution has declared it shall be appellate, the distribution of jurisdiction made in the Constitution is form without substance." *Marbury v. Madison*, 1 Cranch 49, on page 67. Besides this being from the greatest Judge and the highest court of this country, it is so clearly correct that we do not hesitate to adopt and follow it.

It seems to us to be a necessary result that as this act takes from the Superior Court its constitutional right to a grand jury, the effect of which is to deprive that Court of its *original jurisdiction*, the act so depriving the Superior Court of this jurisdiction is in conflict with that part of the Constitution that gave the Superior Court a *grand jury and original jurisdiction as a constitutional court.*

But we said the contention of the defendants could not be true, and was in conflict with the reasoning of the opinion in *Rhyne v. Lipscombe*, that if it were true its logical result would lead to the utter destruction of the Superior Courts.

It must be admitted—in fact it is admitted—that if the Legislature can deprive the Superior Courts of all their *original criminal jurisdiction,* that the Legislature may also deprive the Superior Courts of all their *original civil jurisdiction.*

Suppose the Legislature establishes another inferior court for the county of Forsyth and the other counties composing the criminal circuit, and gives them *original exclusive jurisdiction of all civil actions,* in which act it provides that it shall be unlawful for the Clerk of the Superior Court to issue any summons returnable to the Superior Court; and if the act taking the grand jury from the Superior Court, thereby cutting off the means by which it obtained *original jurisdiction* is constitutional, it would be constitutional to take away the civil jurisdiction of the Superior Court in the way we have suggested; we would then have the carcass of the Superior Court, without life. This can not be done.

Almost this very question was presented in *Rhyne v. Lipscombe.* The Legislature of 1897 undertook to give Judge *Ewart* both civil and criminal jurisdiction, equal to that of the Superior Courts, and this Court said it could not be done. But if what the Legislature of 1899 did in taking from the Superior Courts their grand juries and giving Judge *Stevens exclusive original jurisdiction* can be done, then the Court was in error in holding that it could not be given to Judge *Ewart,* because it can make no difference, so far as the constitutional question is concerned, whether this *exclusive original jurisdiction* is given to one or to two Judges.

The cases of *State v. Ray,* 122 N. C., 1097, and *Tate v. Commissioners,* 122 N. C., 661, are cited by defendants. But they simply follow *Rhyne v. Lipscombe,* and are put upon that case, and we do not deem it necessary to give them a separate consideration.

In *Wilson v. Jordan,* 124 N. C., 683, the same argument

was advanced as to grand juries, putting that argument upon *Rhyne v. Lipscombe*. This opinion was concurred in by all the Court except Justice CLARK, who filed a lengthy dissenting opinion, based entirely upon other grounds, apparently agreeing to this argument in that case, as he does not allude to it, unless it is in saying, if there are other errors they can be corrected by the Legislature.

The only remaining question is the objection made to Mott's being the proper relator. But as it is admitted that he is the Solicitor of Forsyth Superior Court, and entitled to the fees and emoluments, we think he has such an interest as entitles him to bring and maintain this action. *Houghtalling v. Taylor,* 122 N. C., 141; *Hines v. Vann,* 118 N. C., 3.

There was error in the judgment appealed from, and the writ of mandamus should have been issued as prayed for.

Error.

MONTGOMERY, J., dissenting, thinks that under sec. 12, of Art. IV, of the State Constitution, the General Assembly has the power to create Criminal Courts, and to give them all, or such part as it pleases, of the original criminal or original civil jurisdiction above that given by the Constitution to Justices of the Peace, and even as to that it may confer concurrent original jurisdiction, all subject to the right of appeal to the Superior Courts. *Rhyne v. Lipscombe,* 122 N. C., 650; *Tate v. Commissioners, Ibid,* 661; *Pate v. Railroad, Ibid,* 879; *State v. Ray, Ibid,* 1098; *State v. Hinson,* 123 N. C., 755.

CLARK, J., dissenting. Prior to the Constitution of 1868 all the courts, including the Supreme Court, were created by the Legislature, which allotted to each court such jurisdiction as it thought proper. The Supreme Court was remodeled by the Legislature at least three different times. *K. P. Battle's*

*History of the Supreme Court, 103 N. C. 475—479.* The Constitution of 1868, Art. IV, sec. 4, provided: "The judicial power of the State shall be vested in a court for the trial of impeachments, a Supreme Court, Superior Courts, Courts of Justices of the Peace, and Special Courts." And sec. 15: "The Superior Courts shall have exclusive original jurisdiction of all civil actions, whereof exclusive original jurisdiction is not given to some other courts; and of all criminal actions in which the punishment may exceed a fine of $50 or imprisonment for one month." And sec. 19 authorized the General Assembly to establish Special Courts for the trial of misdemeanors in towns and cities. It was soon held in consequence that these Special Courts had no jurisdiction in civil cases (*Wilmington v. Davis,* 63 N. C., 582; *Edenton v. Wool,* 65 N. C., 379), and no criminal jurisdiction except over misdemeanors. *State v. Pender,* 66 N. C., 313; *Washington v. Hammond,* 76 N. C., 33.

This "straight-jacket" system not being satisfactory to the people of the State they amended the Constitution in 1875 by striking out this sec. 15, which fixed the Superior Court with original jurisdiction. By that repeal, of itself, the jurisdiction of the Superior Court was restored to legislative control, as was the case before 1868. But to put the matter beyond controversy, the same convention amended the above sec. 4 (now become sec. 2), of Art. IV, by striking out the words "Special Courts" and inserting in lieu thereof the words "such other courts inferior to the Supreme Court as may be established by law." Sec. 12, as to the number of Superior Court districts, was re-written and made sec. 10, reducing the number of Superior Court Judges from twelve to nine, and adding the words: "But the General Assembly *may reduce* or increase the number of districts." And then a new section 12 was inserted which is as follows: "The

General Assembly shall have no power to deprive the judicial department of any power or jurisdiction which rightfully pertains to is as a co-ordinate department of the government; but the General Assembly *shall allot and distribute* that portion of this power and jurisdiction which does not pertain to the Supreme Court, among the other courts prescribed in this Constitution, or *which may be established by law,* in such manner as it may deem best, provide also a proper system of appeals; and regulate by law when necessary, the methods of proceeding in the exercise of their powers, of all the courts below the Supreme Court, so far as the same may be done without conflict with other provisions of this Constitution." By striking out and repealing the provision of the Constitution of 1868, which had given the Superior Courts original civil and criminal jurisdiction, by inserting the new provision authorizing the Legislature to establish other courts inferior to the Supreme Court, to reduce at will the number of Superior Court districts, and to "allot and distribute" the jurisdiction below the Supreme Court among the other courts (whether named in the Constitution or established by law) *in such manner* as the Legislature "may deem best," it is clear that the organic law put the remodeling of the jurisdiction of all the courts below the Supreme Court into the hands of the General Assembly, reverting (except as to the Supreme Court) back to the system which, prior to 1868, placed all the courts, even the jurisdiction and constitution of the Supreme Court itself, in the power of the Legislature. Should, therefore, the Legislature see fit to deprive the Superior Courts of all original jurisdiction, making it purely an intermediate appellate court, like courts of that kind in New York and other States, it is clearly within legislative discretion by the express words of the amendments made to the Constitution in 1875. This is

still clearer by reference to the legislative power over the jurisdiction of the courts up to 1868, and the evident intent and purpose to restore that power by the repeal of the provisions in the Constitution of 1868, which gave the Superior Courts original jurisdiction. This Court can not re-enact and replace provisions stricken out of the Constitution by the convention of 1875, whose action in so doing has been ratified by the people at the ballot box.

The very utmost that was reserved to the Superior Courts, after the amendments of 1875, is that they retain the headship of the judicial system below the Supreme Court, and that from them alone appeals lie to this Court, and that appeals lie to the Superior Courts from Justices of the Peace. Sec. 27, Art. IV. Whatever jurisdiction the Superior Courts have beyond this, is a matter of legislative enactment, and not of constitutional right, as this Court (as now constituted) has over and again decided.

In *Rhyne v. Lipscombe,* 122 N. C., at p. 655, this Court said: "Subject to these constitutional restrictions" (just recited as being the right of appeal from Justices to the Superior Courts, and that all appeals to this Court must come from the Superior Courts), "the General Assembly may allot the jurisdiction below the Supreme Court. It may create Criminal Courts, or Circuit Courts, City Courts, or other courts, and give them *all,* or such part as it thinks proper, *of the original criminal or original civil jurisdiction* above that given by the Constitution to Justices of the Peace, and even as to that it may confer concurrent original jurisdiction with the Justices of the Peace, for their jurisdiction is not exclusive." This decision is expressly in point, was concurred in by all the Judges, and adjudged that the Legislature had power to give to the Criminal Courts all the original civil and criminal jurisdiction heretofore used by the Superior

Courts—but denied that the Legislature could make them the equal of the Superior Courts by taking away the headship of the Superior Court through its appellate supervision of them.

In *Tate v. Commissioners*, 122 N. C., at page 663, this Court again said: "It is competent for the General Assembly to give to said Circuit Court, or any other court it may erect, original jurisdiction, *either exclusive or concurrent*, with the Superior Court, *civil as well as criminal*, of all matters which may originate in said counties, subject to the right of appeal therefrom to the Superior Courts." And this is emphasized and reiterated on the next page.

In *Pate v. Railroad*, 122 N. C., at page 879, it is said that Art. IV, sec. 12, "conferred on the Legislature power to give to courts created by it *original jurisdiction, exclusive or concurrent* with the Superior Courts," subject only to appellate supervision over such subordinate court by the Superior Courts, since appeals lay to this Court only from the Superior Courts.

In *State v. Bennie Ray*, 122 N. C., at page 1098, it is said that the act creating the Criminal Circuit Court of Buncombe, etc. (the court whose jurisdiction is here called in question), "confers upon said court *exclusive original* jurisdiction of *all crimes*, misdemeanors and offenses committed within the counties composing said districts." And adds that the Court has held that provision of the statute valid in *Rhyne v. Lipscombe, supra*, and reaffirms that decision.

*State v. Rumbough*, 122 N. C., 1104, and *State v. Potsell*, 122 N. C., 1105, were decided "upon the ruling in *State v. Bennie Ray*," *supra*.

In *Malloy v. Fayetteville*, 122 N. C., at page 482, the above cases of *Rhyne v. Lipscombe, Tate v. Commissioners*, and *State v. Ray*, were all cited on that point "that the power of

56——126

the General Assembly to allot and distribute the jurisdiction below this Court was unlimited" save as in those cases stated (as above recited).

The same three cases were cited as authority by FAIR-CLOTH, C. J., in *State v. Hinson,* 123 N. C., 755, the Court holding that the defendant was not entitled to a trial *de novo* by a jury in the Superior Court, but only to an *appeal* upon matters of law, as the Legislature had so prescribed, and that it had the right so to prescribe under Constitution, Art. IV, sec. 12. *State v. Hinson* is cited as authority for that proposition in *State v. Davidson,* 124 N. C., at page 844, and in *State v. Bost,* 125 N. C., at page 709.

*Rhyne v. Lipscombe* is cited as authority by FURCHES, J., in *Wilson v. Jordan,* 124 N. C., at page 690, and in *McCall v. Webb,* 125 N. C., at page 247, and by DOUGLAS, J., 125 N. C., 729.

Several of the above cases have been also cited as authority in opinions at this term.

After the above repeated and reiterated construction of the amended Constitution as giving the General Assembly power to confer upon courts created by it "all the original jurisdiction, civil as well as criminal," which was formerly in the Superior Courts, subject only to the appellate jurisdiction of the Superior Court, it should seem that the matter was settled. The Judges who concurred in all the above decisions are the same who now sit on the Court.

In the above cases, the jurisdiction was construed at the instance of parties in civil actions, and of both the State and defendants in criminal actions, directly raising the question of jurisdiction. In the present case it is somewhat indirectly raised. The plaintiff who is seeking by mandamus to compel the County Commissioners to draw a grand jury is not a citizen of the county, and his only interest is in the

fees which as Solicitor of the Superior Court he might receive if the original jurisdiction of criminal cases, in whole or in part, should be taken from the Criminal Court to which the General Assembly has seen fit to "allot and apportion" it, as empowered by the express language of the Constitution and so construed by the above numerous decisions of this Court. The statute creating the Criminal Court reserves, as the decisions hold necessary, the right of appeal in matters of law to the Superior Court, FAIRCLOTH, C. J., in *State v. Hinson, supra.*

All the decisions of all courts that exercise the power at all of declaring an act of the Legislature unconstitutional hold that it can only be done when it is plainly and clearly so, and if there is any reasonable doubt, the presumption in favor of constitutional action by the co-ordinate branch of the government will prevail. *Sutton v. Phillips,* 116 N. C., 502. After the above repeated decisions sustaining the jurisdiction of Criminal Courts when conferred by the Legislatures of 1895 and 1897, this Court is in no condition to hold that the same jurisdiction thus held valid is plainly and clearly unconstitutional when conferred by the Legislature of 1899. There is no clause of the Constitution which conflicts with the act abolishing the grand jury in the Superior Court of Forsyth County.

There is no constitutional provision requiring a grand jury at any term of the Superior Court, and since the amendments of 1875, no constitutional bestowal upon the Superior Courts of the original criminal jurisdiction, which would require a grand jury. In Wake, and many other counties, certain terms of the Superior Court have no grand jury, but are purely for civil business. If, therefore, the peremptory mandamus should issue as prayed for, it should properly issue, if at all, to the General Assembly, for the County Commissioners of Forsyth are not empowered to legislate as to what

terms of the Superior Courts must be for criminal business, requiring a grand jury, and what terms may be for civil business, not necessitating a grand jury.

It may be true, and doubtless is, that the growth of population and business does not yet require a Superior Court system having only appellate jurisdiction. The Legislature, the best and only judge of that matter, has so thought, and in only a few counties at present is the Superior Court made appellate, and in them only as to criminal business. It may also be true that a frank increase of the number of Superior Court Districts with Judges elected for fixed terms by the people, is preferable to the creation of Criminal Courts, with non-rotating Judges and liable to be abolished and recreated at the will of Legislatures, changing with the vicissitudes of parties. But under the Constitution that question is to be settled by the General Assembly, as from time to time "it may deem fit," and not by the decrees of this Court.