### W. M. JONES v. STANDARD OIL COMPANY OF NEW JERSEY, INCORPORATED, AND W. J. WALLACE.

(Filed 2 March, 1932.)

1. **Courts B b—Court has inherent power to pass upon question of its jurisdiction.**

   Where an action for a negligent personal injury is brought in a general county court, and the defendants file a plea in abatement on the ground that the statute giving the general county court jurisdiction of this class of actions was unconstitutional and that the court was without jurisdiction of the particular action alleged: *Held,* the county court may determine the question of its jurisdiction in its inherent powers.

2. **Courts B a—Legislature may create courts inferior to Superior Court if provision is made for appeal to the Superior Court.**

   The Superior Court is a court established by the Constitution, Art. IV, sec. 2, and while the General Assembly has no power to destroy or limit its constitutional jurisdiction, it may, under the provisions of the Constitution, create county courts of concurrent or partly concurrent jurisdiction if provision is made for appeal to the Superior Court, subject to review by the Supreme Court upon further appeal, there being no conflict with other provisions of the Constitution, Art. IV, sec. 12, and in this action for a negligent personal injury brought in a general county court the constitutionality of the statute, conferring jurisdiction of this class of actions upon it with provision for appeal to the Superior Court, is upheld, and the defendants' plea in abatement on the ground that the court did not have jurisdiction was properly overruled. Chap. 27, N. C. Code of 1931.

3. **Abatement and Revival A b—Constitutionality of statute conferring jurisidiction on court held properly raised by plea in abatement.**

   Where an action for a negligent personal injury is brought in a general county court and the defendants file a plea in abatement on the ground that the statute conferring jurisdiction of this class of cases on the court was unconstitutional and that the court was without jurisdiction of the particular action alleged: *Held,* the plea in abatement properly raised the question of the constitutionality of the statute and the jurisdiction

of the general county court, but upon the overruling of the plea and appeal to the Superior Court it was not error for the Superior Court to allow the defendants time to file answer.

STACY, C. J., dissenting.

BROGDEN, J., concurs in the dissenting opinion.

APPEAL by plaintiff and by defendants from *Stack, J.,* at July Term, 1931, of BUNCOMBE. Affirmed on plaintiff's appeal. Modified and affirmed on defendants' appeal.

The plaintiff brought suit against the defendants in the General County Court of Buncombe County to recover damages for personal injury alleged to have been caused by the negligent acts of the defendants, which are specifically set forth in the complaint. The defendants filed a demurrer on the ground that the General County Court has no jurisdiction of the action for the reason that the public statutes under which the court purported to exercise jurisdiction conflict with the Constitution of North Carolina and are therefore void. Thereafter, in deference to the decision in *Ellis v. Perley,* 200 N. C., 403, a consent order was entered disallowing the demurrer. The defendants then filed a verified answer in bar and abatement of the plaintiff's action. The plaintiff prayed judgment on the pleadings, saying that his demand was in effect a demurrer to the defendants' pleas and an admission of the facts therein stated. The General County Court gave judgment overruling the answer and plea in abatement and adjudging:

1. That the defendants are in default and that the plaintiff is entitled to judgment by default and inquiry.

2. That the plaintiff have and recover of the defendants such amount of damages as upon proper inquiry may be found by a jury.

3. That this cause be and the same is hereby continued to the July Term, 1931, for trial of the issue as to the amount of damages sustained by the plaintiff.

The defendants excepted and appealed to the Superior Court and Judge Stack rendered the following judgment:

"The court is of the opinion, and so holds, that the question of jurisdiction of the county court cannot be raised by the defendants in this action in the manner attempted before the county court and upon the appeal to this court; but if the jurisdiction can be thus raised in this cause, this court is of the opinion, and so holds, that the county court has jurisdiction to hear and try the case.

"This court is further of the opinion that the defendants in good faith challenged the jurisdiction of the county court by the answer filed, and that when said court overruled the pleas contained in said answer it

should have allowed the defendants to file an answer upon the merits and not render a judgment by default and inquiry.

"Wherefore, it is considered and adjudged, upon this appeal, that the judgment by default and inquiry rendered by the county court be, and the same is, hereby reversed and overruled and the defendants are allowed twenty days from this date, to wit: 25 July, 1931, to file an answer to the allegations in the complaint of the plaintiff. The cause is remanded to the county court, there to proceed according to the ruling of this court and the Code of Civil Procedure."

From this judgment both parties appealed upon assigned error.

*Vonno L. Gudger, Geo. O. Perkins and J. Will Pless for plaintiff.*
*Lee & Lee and Carter & Carter for defendants.*

ADAMS, J. In the exercise of its legislative power the General Assembly has made provision for the establishment and organization of general county courts. N. C. Code of 1931, ch. 27, subch. 5, secs. 1608(f)-1608(dd). By the act of 1929 these statutes were made applicable to Buncombe County. Pub. Laws 1929, ch. 159. Section 1608(f)1 provides that if in their opinion the public interest will best be promoted thereby, the commissioners of any county may establish a general county court by resolution reciting the reasons for their action together with the opinion that the call of an election is not necessary. The right of appeal is preserved. Section 1608(cc).

Pursuant to authority thus conferred the board of commissioners of Buncombe County on 30 September, 1929, formally established a general county court, appointed a judge and a prosecuting officer, prescribed their terms of office, and fixed their respective salaries, which were to be payable monthly.

On 24 October, 1930, the plaintiff instituted the present action to recover damages for personal injury suffered through the alleged negligence of the defendants. After their demurrer was overruled the defendants filed a plea purporting to be in bar and in abatement of the action. The asserted ground is the want of jurisdiction; and in support of their plea the defendants assail certain statutes purporting to authorize the creation of the court which, they say, are in conflict with the Constitution. They specifically impeach the validity of the following sections: 1608(g), which provides that if the public interest calls for such action the county commissioners may appoint the judge and prescribe his term of office; section 1608(u) which permits, if it does not presume, the waiver of a trial by jury; section 1608(f)2, which invests the board with power to abolish the court; section 1608(t), which assimilates

process, pleadings, and rules of procedure to the practice in the Superior Court; and section 1608(n), which confers upon the general county court jurisdiction concurrent with the Superior Court in all actions founded on contract, in all actions not founded on contract, in all actions to try title to land and to prevent trespass and restrain waste, and to issue restraining orders and injunctions in all actions pending in the county court.

Before entering upon an examination of the objections interposed to the constitutionality of the several statutes under which the court in question was created, we may take notice of the preliminary proposition urged by the plaintiff and sustained in the judgment: that is, that the jurisdiction exercised by the county court cannot be questioned in this proceeding. The defendants say their plea is not an attack upon the constitutionality of the county court *in toto* or a denial of its right to perform legitimate functions; that the power of the Legislature to authorize the creation of a county court with capacity to exercise inferior criminal and civil jurisdiction is admitted, provided the jurisdiction is in accord with the fundamental law. The plea is intended to raise only one question: whether the county court has jurisdiction of the cause of action set forth in the complaint. The jurisdiction of a court is generally prescribed and defined, and as a rule every court has the inherent power to determine whether it has jurisdiction of a pending action. A justice of the peace, for example, may adjudge whether a cause of action is within or beyond his jurisdiction. So it is with the Superior Court, and indeed with all other courts. On this point the citation of authority is not necessary. It is no less manifest that in such instances the decision of the lower court is subject to review on appeal. Hence we need consume no time in comparing or distinguishing *S. v. Shuford,* 128 N. C., 588, *Chemical Co. v. Turner,* 190 N. C., 471, and analogous cases, which were cited in the briefs or in the oral argument; and as the statutes under which the court was established are neither local, private, nor special we need only remark that its creation is not within the inhibition of the twenty-ninth section of article two. The single question raised by the appellants directs attention to the allotment and distribution of that portion of the power and jurisdiction of the judicial department which does not pertain to the Supreme Court.

In the Constitution of 1868, Art. IV, sec. 4, it was provided that the judicial power of the State should be vested in a court for the trial of impeachments, a Supreme Court, Superior Courts, courts of justices of the peace, and special courts; and in section 19 that the General Assembly should provide for the establishment of special courts for the trial of misdemeanors in cities and towns. These were the only special

courts. *S. v. Pender*, 66 N. C., 314. Article IV, sec. 15, provided that
the Superior Court should have exclusive original jurisdiction of all
civil actions, whereof exclusive original jurisdiction was not given to
some other courts and of all criminal actions in which the punishment
did not exceed a fine of fifty dollars or imprisonment for one month.
The Convention of 1875 in amending the Constitution retained section
19, which is now Art. IV, sec. 14, but substituted the following for the
fourth and fifteenth sections:

"The judicial power of the State shall be vested in a court for the
trial of impeachments, a Supreme Court, Superior Courts, courts of
justices of the peace, and such other courts inferior to the Supreme
Court as may be established by law." Art. IV, sec. 2.

"The General Assembly shall have no power to deprive the judicial
department of any power or jurisdiction which rightfully pertains to
it as a coördinate department of the government; but the General As-
sembly shall allot and distribute that portion of this power and juris-
diction which does not pertain to the Supreme Court among the other
courts prescribed in this Constitution or which may be established by
law, in such manner as it may deem best; provide also a proper system
of appeals; and regulate by law, when necessary, the methods of pro-
ceeding, in the exercise of their powers, of all the courts below the
Supreme Court, so far as the same may be done without conflict with
other provisions of this Constitution." Art. IV, sec. 12.

To what extent is the General Assembly empowered to allot and dis-
tribute that portion of this power and jurisdiction which does not per-
tain to the Supreme Court to the other courts prescribed in the Con-
stitution or established by law? This is the controlling and decisive
question.

The Superior Court is a constitutional court; it cannot be abolished;
its inherent powers cannot be destroyed. *Mott v. Commissioners*, 126
N. C., 866; *S. v. Baskerville*, 141 N. C., 811. The General Assembly
cannot displace it from its position in the judicial system or establish
another court of equal jurisdiction upon a plan different from that pro-
vided by the Constitution. *Rhyne v. Lipscombe*, 122 N. C., 650; *Tate v.
Commissioners, ibid.*, 661. But an allotment or division of jurisdiction
is within the contemplation of Article IV, sec. 12. The Legislature may
therefore allot to inferior courts a portion of the jurisdiction of the
Superior Court, providing also for the right of appeal. N. C. Pleading
& Practice, secs. 53, 54.

The principle was elucidated in the two cases last herein cited and in
*Mott v. Commissioners, supra. Rhyne's case* and *Tate's* dealt with the
Circuit Court of Buncombe, Madison, Haywood, and Henderson coun-

ties. Under the title of "The Criminal Circuit Court" this court was created by an act of the Legislature ratified 23 February, 1895. It was given exclusive original jurisdiction to hear and determine all crimes, misdemeanors, and offenses committed within the designated counties "fully and to the same extent as the Superior Courts of the State, and exclusive appellate jurisdiction of all offenses tried and determined before a justice of the peace, or other magistrate in said counties respectively." Pub. Laws 1895, ch. 75. At the session of 1897 the General Assembly amended this act by changing the name to "The Circuit Court" of the counties named and by providing that "in addition to the criminal jurisdiction he now has (the judge) shall have also as to all civil actions and special proceedings and all civil business originating or pending in said four counties, or either of them, concurrent, equal jurisdiction, power, and authority with the judges of the Superior Courts of the State, to be exercised at chambers or elsewhere in said counties in all respects as the judges of the Superior Courts of the State have such power, jurisdiction and authority." Pub. Laws 1897, ch. 6.

In *Rhyne's case, supra,* it was shown that an action had been tried before a justice of the peace, from whose judgment an appeal had been taken to the Superior Court of Buncombe. The Circuit Court of the four counties assumed jurisdiction and tried the case at the June Term of 1897. There was a verdict for the plaintiff, which the defendant moved to set aside on the ground that the court had no jurisdiction. The motion was denied and the defendant appealed.

In *Tate's case, supra,* the plaintiff applied to the same Circuit Court for a writ of mandamus to compel the board of commissioners of Haywood County to levy a special tax for working the public roads of the county, which had been authorized by chapter 249 of the Public Laws of 1897. The Circuit Court gave judgment for the plaintiff and the defendants appealed, assigning as error the court's ruling that it had jurisdiction of the cause and that the commissioners were compelled to levy the tax.

In its review of the *Rhyne case* the Supreme Court held that the legislative power to allot and distribute the jurisdiction of the courts below the Supreme Court is subject to the limitation that it must be done "without conflict with the other provisions of this Constitution"; that in making the allotment it cannot create new courts and make the officials thereof elective otherwise than by the people, subject to legislative annulment, without independent tenure of office, and freed from the provisions of rotation, restriction of residence, and the requirement that at least two terms must be held annually in each county, and at

the same time confer upon such courts powers which are the same in all respects as those of the Superior Court. It was said, however, that while the Superior Court must retain its jurisdiction by original or appellate process the General Assembly may make the jurisdiction largely appellate by conferring a part of its jurisdiction on inferior courts. The principle is stated in these words: "Subject to these constitutional restrictions, the General Assembly may allot the jurisdiction below the Supreme Court. It may create criminal courts or circuit courts, city courts, or any other courts, and give them all or such part as it thinks proper, of the original criminal or original civil jurisdiction above that given by the Constitution to justices of the peace, and even as to that it may confer concurrent original jurisdiction with the justices of the peace (for their jurisdiction is not exclusive), but if it gives such courts concurrent jurisdiction, civil or criminal, of such portion of the original jurisdiction which is left to be exercised by the Superior Court, still in such cases an appeal must lie from such inferior or intermediate courts to the Superior Court, as in all other cases in which there is a right of appeal, for the General Assembly cannot, 'without conflict with other provisions of the Constitution,' either deprive the justices of the peace of the jurisdiction conferred on them by the Constitution or deprive the Superior Courts of their constitutional position as Superior Courts over all other inferior courts, and with at least appellate jurisdiction of all matters from which appeals would lie to this Court."

But this Court held that the act conferring upon the Circuit Court jurisdiction equal and concurrent in all respects with that exercised by judges of the Superior Court was unconstitutional and void, and that the plea to the jurisdiction should have been sustained. The judgment was quashed and the cause was remanded to the Superior Court.

Reaching the same conclusion in *Tate v. Commissioners, supra,* this Court said in addition: "It is competent for the General Assembly to give to said Circuit Court, or any other court it may erect, original jurisdiction, either exclusive or concurrent with the Superior Court, civil as well as criminal, of all matters which may originate in said counties, subject to the right of appeal therefrom to the Superior Courts created by the Constitution, and provided, as to concurrent matters, the Circuit Court first acquires jurisdiction, but it cannot transfer the concurrent jurisdiction of cases which have originated and are pending in the Superior Courts downwards to the Circuit or other inferior courts. The intent expressed in section 12, Article IV (which is an amendment to the Constitution), is not to abolish the Superior Courts, but to authorize inferior courts thereto, with such jurisdiction as the General Assembly may think proper to relieve, to that extent, the pressure upon

the Superior Courts, just as the former courts of common pleas and quarter sessions had original jurisdiction of matters below the Superior Court and to some extent concurrent jurisdiction of certain matters with the Superior Courts, but appeals lay from said courts of common pleas and quarter sessions always to the Superior Courts. While the General Assembly could, therefore, confer upon the Circuit Court such original jurisdiction, civil as well as criminal, as it thought proper, either exclusive or concurrent with the Superior Court (subject always to the right of appeal to the Superior Court) that is not the purport and intent of this act."

The power of the General Assembly to allot a portion of the jurisdiction of the Superior Court to inferior courts and to make the jurisdiction of the latter courts exclusive as well as original is sustained in *Bunting v. Gales,* 77 N. C., 283, *S. v. Jones,* 97 N. C., 469, *S. v. Weddington,* 103 N. C., 364, *S. v. Ray,* 122 N. C., 1098, and *S. v. Collins,* 151 N. C., 648 in which it is said that the Legislature has the power, under the Constitution, to establish inferior courts, not only for cities and towns (Article IV, sec. 14), but also for counties. *S. v. Shine,* 149 N. C., 480. The statutes authorizing the general county courts purport to allot only a part of the jurisdiction of the Superior Court and in this respect materially differ from the acts creating the Circuit Court dealt with in *Rhyne v. Lipscombe.*

The criticism in *Mott v. Commissioners, supra,* of such expressions in the *Rhyne case* as "exclusive jurisdiction except as to the right of appeal" is inapplicable to the act under consideration, which purports to confer, not exclusive, but concurrent jurisdiction upon the general county court. In subsequent cases it has been suggested that in *Rhyne v. Lipscombe, supra,* the Supreme Court considered only the relative position as to power and jurisdiction of the Superior Court as a part of our judicial system and the right of the latter alone to hear appeals from the courts of justices of the peace. But by reference to the original file it may be seen that the judge of the Circuit Court prepared an elaborate opinion in defense of the court's jurisdiction, which was a part of the case on appeal. In consequence, the Supreme Court properly considered the question of jurisdiction in connection with pertinent sections of the Constitution. The division or allotment of jurisdiction as therein promulgated has been recognized in many of our decisions, has often been practically applied, and as pointed out in *Sewing Machine Co. v. Burger,* 181 N. C., 241, has been exercised very generally by the Legislature in the establishment of inferior courts.

We conclude, upon consideration of the record, that the General County Court of Buncombe County was lawfully constituted pursuant

to statutes enacted by the General Assembly in the exercise of the powers conferred upon it by the Constitution, and that the court has jurisdiction of the plaintiff's action. With respect to these matters the judgment of the Superior Court is affirmed. There was error in holding that the question of jurisdiction is not raised and in this respect the judgment is modified.

There was no error in allowing the defendants to file an answer. On the plaintiff's appeal the judgment is

Affirmed.

STACY, C. J., dissenting: I am content to rest my dissent largely upon quotations from the Court's opinion.

The following pronouncement, made therein, is not questioned:

"The General Assembly cannot displace it (Superior Court) from its position in the judicial system or establish another court of equal jurisdiction upon a plan different from that provided by the Constitution. *Rhyne v. Lipscombe,* 122 N. C., 650; *Tate v. Commissioners, ibid.,* 661. But an allotment or division of jurisdiction is within the contemplation of Article IV, sec. 12."

It is conceded that the General County Court of Buncombe County is not established upon the same plan as that provided in the Constitution for the creation of Superior Courts. But its equality of jurisdiction in civil matters with that of the Superior Court would seem to result from the following provisions of the statute:

C. S., 1608(n)—"The jurisdiction of the general county court in civil actions shall be as follows:

"1. Jurisdiction concurrent with that of the justices of the peace of the county.

"2. Jurisdiction concurrent with the Superior Court in all actions founded on contract.

"3. Jurisdiction concurrent with the Superior Court in all actions not founded upon contract."

In the second and third paragraphs, just quoted, it appears that the jurisdiction of the general county court is concurrent with that of the Superior Court in all civil actions founded on contract and in all civil actions not founded upon contract. Things equal to the same thing are equal to each other. No point is made of the fact that the general county court is also given civil jurisdiction concurrent with that of the justices of the peace of the county. To this extent its civil jurisdiction is greater than that of the Superior Court. *Machine Co. v. Burger,* 181 N. C., 241, 107 S. E. 14.

BYRD *v.* HOSPITAL.

Based on the foregoing premises, I do not agree with the following conclusions announced in the Court's opinion:

"The statutes authorizing the general county courts purport to allot only a part of the jurisdiction of the Superior Court and in this respect materially differ from the acts creating the Circuit Court dealt with in *Rhyne v. Lipscombe.*"

BROGDEN, J., concurs in dissent.